H. BAARS & CO. v. MITCHELL.

(Circuit Court of Appeals, Fifth Circuit.    June 3, 1907.)

No. 1,628.

SALES—PASSING OF TITLE TO PROPERTY.
    The owner of a sawmill entered into a contract to sell and deliver all the lumber of certain discriptions then on hand and all he should make during a specified time at stated prices; the contract providing that the purchasers should advance every 30 days 75 per cent. of the price of the lumber cut during the preceding month, and the remainder of the price, less freight, to be paid when the lumber was shipped and delivered. The seller was adjudicated a bankrupt, having in his yard at the time certain lumber of the kinds described in the contract, which had been separately piled, and for which bills had been presented to the purchasers, who had paid 75 per cent. of the price shown thereby.  Held, that as to such lumber the sale was complete, and the title had vested in the pur-

chasers, who were entitled to possession of the same as against the trustee in bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 569.]

Petition to Revise Proceedings of the District Court of the United States for the Northern District of Florida, in Bankruptcy.

Jno. C. Avery for petitioner.

E. C. Maxwell and Lucius J. Reeves, for respondent.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The facts in the case are that R. R. Cowan, the owner of a sawmill at Cowan, Fla., through his duly authorized agent, entered into the following contract with H. Baars & Co., of Pensacola, Fla., to wit:

Pensacola, Fla., Sept. 15th, '04.

Messrs. H. Baars & Co., Pensacola, Fla.—Gentlemen: Confirming verbal understanding with you, I confirm sale to you of all lumber of the following description now on hand at the mill of R. R. Cowan, Cowan, Fla., and all that he will manufacture during the next six months from this date, and at the prices named, as follows:

All crown of all sizes at..............................$24 00 per M.
All prime, 4–4, 5–4, 6–4, and 2x9 at..................... 16 00 " "
All heart face, 80% clear, 1x4, 4–1–2, 5, 6, and 7, at...... 20 00 " "
All heart face, " . " 5–4x4, 4 1–2, 6 & 7, and 6–4x6.. 20 00 " "

Prices named as above include the delivery of the lumber on cars at Pensacola. Lumber to be cut by Mr. Cowan to conform as near as possible, without waste of material, with your requirements, and reports of amount of same cut during each month and on hand to be furnished you every thirty days.

Terms: In consideration of this agreement, you are to advance to me, as agent for R. R. Cowan, every thirty days, seventy-five per cent. of the delivered value of the lumber, including what is now on hand cut during each month in cash, and balance due on said lumber as shipped, after deducting R. R. Frt. charges.

It is also mutually agreed that Mr. Cowan will not make any more of the crown and prime size 2x9 than is practicable for him to cut, it being understood that you want as little of this size as possible, but as much of the 4–4, 5–4, and 6–4 as he can get.

It is understood that while Mr. Cowan's entire sawmill plant and product is under a mortgage to Wm. Fisher, or his assigns, and the State Savings Bank of Tallahassee of about $8,000.00 at the present time, that the mill and lumber is fully insured covering this amount and value of advance on lumber.

Please let me have your confirmation of the above, and oblige.

Yours very truly,        Scarritt Moreno, as Agt. for R. R. Cowan.

Following the expiration of the six months, the parties continued dealings on substantially the same terms, and Cowan had cut in March, April, May, June, and July of 1905 about 200,000 feet of lumber intended for the Baars Company, which was separately piled and stacked in the millyards, and was known and designated as "Baars' lumber." On this lot of lumber Baars & Co. had under the contract paid 75 per cent. of the agreed price when Cowan, on August 23, 1905, on his own petition, was adjudicated a bankrupt. The payments for the lumber were made on bills presented for each month, and the following is a sample copy of the bill and receipt passed on each payment:

Pensacola, Fla., Apr. 22, 1905.

H. Baars & Co., Bo't of Scarritt Moreno as Agt. for R. R. Cowan, lumber cut by R. R. Cowan for a/c of H. Baars & Co., from Mar. 19th to April 21st, 1905, all of same being in stock at mill of R. R. Cowan, Cowan, Fla. [Here follow, detailed under proper heads, quality, sizes, quantity, with specific measurements, prices, with total amount of bill, to wit ..........................................................$1,007 06]

Credit.

75 per cent cash advances on a/c purchase price.................. 755 30

Bal. due less Frt. to Pensacola...........................$ 251 76
Rec'd payment.

R. R. Cowan, By S. Moreno, Agt.

The trustee in bankruptcy claimed the lumber as belonging to the estate. Baars & Co. claimed it as having been purchased under the contract. On the hearing in the bankruptcy court, the lumber was adjudged to belong to the bankrupt's estate, and Baars & Co. bring this petition for revision.

In Hatch v. Oil Co., 100 U. S. 124, 130, 25 L. Ed. 554, the law controlling this case is set forth with great clearness, and we quote at some length:

"Nothing was required at common law to give validity to a sale of personal property except the mutual assent of the parties to the contract. As soon as it was shown by competent evidence that it was agreed by mutual assent that the one should transfer the absolute property in the thing to the other for a money price, the contract was considered as completely proven and binding on both parties. If the property, by the terms of the agreement, passed immediately to the buyer, the contract was deemed a bargain and sale; but if the property in the thing sold was to remain for a time in the seller, and only to pass to the buyer at a future time or on certain conditions inconsistent with its immediate transfer, the contract was deemed an executory agreement. Contracts of the kind are made in both forms, and both are equally legal and valid; but the rights which the parties acquire under the one are very different from those secured under the other. Ambiguity or incompleteness of language in the one or the other frequently leads to litigation, but it is ordinarily correct to say that, whenever a controversy arises in such a case as to the true character of the agreement, the question is rather one of intention than of strict law; the general rule being that the agreement is just what the parties intended to make it, if the intent can be collected from the language employed, the subject-matter, and the attendant circumstances. Where the specific goods to which the contract is to attach are not specified, the ordinary conclusion is that the parties only contemplated an executory agreement. Reported cases illustrate and confirm that proposition, and many show that where the goods to be transferred are clearly specified, and the terms of sale, including the price, are explicitly given, the property, as between the parties, passes to the buyer, even without actual payment or delivery. 2 Kent, Com. (12th Ed.) 492; Tome v. Dubois, 6 Wall. (U. S.) 548, 554, 18 L. Ed. 943; Carpenter v. Hale, 8 Gray (Mass.) 157; Martineau v. Kitching, Law Rep. 7 Q. B. 436, 449; Story, Sales (4th Ed.) § 300. Standard authorities also show that, where there is no manifestation of intention, except what arises from the terms of sale, the presumption is, if the thing to be sold is specified and it is ready for the immediate delivery, that the contract is an actual sale, unless there is something in the subject-matter or attendant circumstances to indicate a different intention. Well-founded doubt upon that subject cannot be entertained if the terms of bargain and sale, including the price, are explicit; but when the thing to be sold is not specified, or if when specified something remains to be done to the same by the vendor, either to put it into a deliverable state, or to ascertain the

price, the contract is only executory. In the former case, there is no reason for imputing to the parties any intention to suspend the transfer, inasmuch as the thing to be sold and the price have been specified and agreed by mutual consent, and nothing remains to be done. Quite unlike that, something material remains to be done by the seller in the latter case before delivery, from which it may be presumed that the parties intended to make the transfer dependent upon the performance of the things yet to be done. Suppose that is so, still every presumption of the kind must yield to proof of a contrary intent, and it may safely be affirmed that the parties may effectually agree that the property in the specific thing sold, if ready for delivery, shall pass to the buyer before such requirements are fulfilled, even though the thing remains in the possession of the seller.

"Where a bargain is made for the purchase of goods, and nothing is said about payment or delivery, Bailey, J., said the property passes immediately, so as to cast upon the purchaser all future risk, if nothing remains to be done to the goods, although he cannot take them away without paying the price. Simmons v. Swift, 5 B. & C. 857. Sales of goods not specified stand upon a different footing; the general rule being that no property in such goods passes until delivery, because until then the very goods sold are not ascertained. But where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take the same and to pay the stipulated price, the parties, says Parke, J., are thus in the same situation as they would be after a delivery of goods under a general contract, for the reason that the very appropriation of the chattel is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and to pay the price is equivalent to his accepting possession. Dixon v. Yates, 5 Barn. & Adol. 313, 340; Shep. Touch. 224. When the agreement for sale is of a thing not specified, or for an article not manufactured, or of a certain quantity of goods in general, without any identification of them or an appropriation of the same to the contract, or when something remains to be done to put the goods into a deliverable state, or to ascertain the price to be paid by the buyer, the contract is merely an executory agreement, unless it contains words warranting a different construction, or there be something in the subject-matter or the circumstances to indicate a different intention. Benjamin, Sales (2d Ed.) 257; Blackburn, Sales, 151; Young v. Matthews, Law Rep. 2 C. P. 127–129; Logan v. Le Mesurier, 6 Moore, P. C. C. 116; Ogg v. Shuter, Law Rep. 10 C. P. 159–162; Langton v. Higgins, 4 H. & N. 400; Turley v. Bates, 2 H. & C. 200–208."

In the light of this high authority, it seems that, in the present case, all the requisites to a binding sale were complied with. There was an undisputed agreement for one party to sell, and another to buy. The thing was specially designated, described, and segregated, the price was fixed, and payments were made as agreed. Although the agreement may have been to some extent executory, it being for the purchase and sale of all lumber of a certain description "now on hand at the mill of R. R. Cowan, Cowan, Fla., and all that he will manufacture" during a specified period, yet when the lumber was manufactured and segregated, and the bills of sale with full details of description were presented and accepted, and payment made according to the contract, there was a complete sale of the property designated in the bills, and the title thereto at once vested in Baars & Co.; and this notwithstanding, under the contract, it remained with Cowan to deliver the lumber at Pensacola and for Baars & Company to pay the balance of the price, less railroad freight on delivery. As between Cowan and Baars & Co. there does not seem room for question as to the rights of the parties. Of course, in the matter now before us, the trustee of Cowan's estate in bankruptcy stands in Cowan's shoes.

The trustee, however, contends that in the present case the title did not pass, because the delivery was not made, the lumber had not been inspected, and the insurance clause in the six months' contract indicates that the title was to remain in Cowan. As to the delivery, it is disposed of by Hatch v. Oil Co., supra; and see McElwee v. Metropolitan Lumber Co., 69 Fed. 305, 16 C. C. A. 232, where, in a case involving a contract in many respects similar to this, Judge Lurton disposes of the questions of delivery, insurance, and inspection. Under the present contract, no inspection was provided for, and none was necessary, further than for the correction of errors. As to the insurance provided for in the six months' contract, it is difficult to see why Baars & Co. should stipulate for insurance, except for their own protection, and Scarritt Moreno, Cowan's agent, testifies that the understanding was that the insurance made was to be for Baars' benefit. However these details may be, the case is clear as to purchase and sale of the property, and, in our opinion, the title fully passed.

The petition for revision in this case is allowed, and it is ordered, adjudged, and decreed that the order of the District Court of the 19th of September, 1906, be reversed; that the petition of H. Baars & Co. be allowed and granted; that the 198,445 feet of lumber described in his said petition was, at the time, the property of H. Baars & Co., and the trustee of R. R. Cowan, as such, was never entitled to the possession thereof; and, accordingly, that the petition of said R. F. Mitchell, trustee, be, and the same is, dismissed. The costs of this court and the bankruptcy court to be paid by said trustee out of funds belonging to the estate in bankruptcy.