## HOPKINS et al. v. BRONAUGH.

### (Circuit Court of Appeals, Ninth Circuit. June 19, 1922.)

#### No. 3810.

Sales ⚖═212—Title to bonds set aside by seller for purchaser held to have passed.
Petitioners, as trustees of an estate, contracted with bankrupt, a corporation dealing in bonds, for the purchase of certain municipal bonds, and paid the estimated purchase price. Bankrupt was to forward the bonds by mail, and at the time of bankruptcy had acquired the greater part, but not all, of the bonds and placed them in an envelope marked with the name of the estate. *Held* that, under Or. L. § 8181, subd. 1, providing that, "where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred," title to such bonds passed to petitioners.

Appeal from the District Court of the United States, for the District of Oregon; Robert S. Bean, Judge.

In the matter of Morris Bros., Inc., bankrupt, Earl C. Bronaugh, trustee, William P. Hopkins and another, trustees of the estate of A. C. Hopkins, deceased, appeal from an order of the District Court. Reversed.

Carey & Kerr and Charles A. Hart, all of Portland, Or., for appellants.

John P. Winter, of Portland, Or., for appellee.

Before ROSS, MORROW, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The appeal is by the trustees of the estate of A. C. Hopkins, deceased, against the trustee in bankruptcy of the estate of Morris Bros., Inc., bankrupt, from an order made by the referee of the bankrupt estate denying an application of the trustees of the estate of the deceased, Hopkins, for an order requiring the trustee of the bankrupt to deliver to them certain bonds—the facts of the case being undisputed. They are, in substance, these:

The bankrupt corporation was engaged in dealing in various bonds, having its place of business in the city of Portland, Or., and at the time of its adjudication as a bankrupt had numerous general unsecured creditors; its indebtedness to them aggregating a large amount of money. William P. Hopkins, as one of the trustees of the estate of the deceased, Hopkins, called, on December 9, 1920, at the place of business of Morris Bros., Inc., in Portland, and after examining bonds there listed for sale placed an order for $60,000 worth of various municipal bonds, subject to the approval of his cotrustee Shaffer, whose residence was Lock Haven, Pa.

The next day—December 10th—the Morris Bros. corporation wrote to Shaffer, advising him of what his cotrustee had done, giving the amounts, date of maturity, rate of interest, and price of the various bonds, which were designated, respectively, Port of Bay City 6 per cent. bonds; Bonner County, Idaho, Independent S. D. 5½ per cent. bonds; Fremont and Madison Counties, Idaho, Joint S. D. 6 per cent.

gold notes; Heyburn-Paul Highway District of Mindoka County, Idaho, 6 per cent. bonds; Rigby Independent S. D. Jefferson County, Idaho, 6 per cent. bonds; Buhl Highway District, County of Twin Falls, Idaho, 6 per cent. bonds—without, however, specifying any particular bond or bonds, and saying that "the bonds above mentioned are to be delivered to you about December 23d or 24th, and we are to send the same via registered mail, insured, addressed to the Estate of A. C. Hopkins, Lock Haven, Pa.," and adding:

"Mr. William Hopkins asked us to mail you copies of the legal opinions on each of the issues above mentioned, together with copies of circulars describing the same, and we are accordingly inclosing same herewith."

Bonds of the face value of $19,000 of the series of bonds mentioned in the December 10th letter of the Morris Bros. corporation were in the possession of and owned by it on that date, but they were all that were then so owned and possessed. On the 15th of the same month Shaffer acknowledged receipt of that letter, approved the purchase, and directed that the bonds be "shipped to us, payment for which will be arranged by Mr. Hopkins." On December 20th, William P. Hopkins sent to the Morris Bros. corporation his check "as trustee of the estate of A. C. Hopkins, for $61,000, to apply on a purchase of municipal bonds made from you on December 9th," with a letter saying:

"Upon receipt of this check, please send me an exact statement of our account, and if there is any considerable balance due you I will send you another check. If there is no considerable balance, I will ask you to send the securities on to Mr. Shaffer at Lock Haven, Pa., and let him remit any balance direct. You will understand that I do not wish to concern myself with the checking of interest and the like here. Mr. Shaffer has an office force in Lock Haven which takes care of that. What I wish to do is simply to pay you in round numbers and have any small difference adjusted from Lock Haven, and also to have all interest, figures, and the like checked there, and, of course, any necessary adjustments had between you and the Lock Haven office."

By December 24th Morris Bros., Inc., had obtained and gathered in enough to make $50,000 in bonds of the series mentioned in its letter of December 10th, and those $50,000 worth of bonds it then put in an envelope, writing "Hopkins Estate" across the envelope, preparatory to forwarding them to the purchaser at Lock Haven, Pa. Before that was done, however, Morris Bros., Inc., was adjudged bankrupt.

The question for decision, therefore, is whether the title to the bonds so placed in the envelope and held by Morris Bros., Inc., for the purpose stated, passed to the estate of Hopkins, or remained in the bankrupt corporation. The court below held that the title did not pass to the estate of Hopkins. We are of the contrary opinion, although we quite agree with the learned judge of that court that the question is one of the real intention of the parties, to be ascertained and determined by the terms of the contract and all of the circumstances surrounding the transaction. Indeed, it is expressly declared by a statute of Oregon that—

"Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred." Subdivision 1 of section 8181 of Olson's Oregon Laws.

We find no substantial conflict in the testimony of the witness Glenn, who represented the Morris Bros. corporation in its negotiation with William P. Hopkins (at the time located at Spokane, Wash.), and the witness William P. Hopkins, who represented the estate of Hopkins, respecting the sale and purchase of the bonds in question. The testimony of both of those witnesses was to the effect that the order given by William P. Hopkins for the bonds was conditional upon the approval of the order by his cotrustee, Shaffer, and that, if so approved, the bonds were to be paid for in Portland, and then sent by the seller to Shaffer at Lock Haven, Pa., by registered mail, properly insured. For the bonds ordered, and that the Morris Bros. corporation had been able to assemble, the undisputed evidence shows that the purchaser had paid, and that these bonds had been set aside by the seller in a container marked "Estate of Hopkins." The sending of them by the seller to Shaffer at Lock Haven was delayed, to enable the seller to procure the other bonds embraced by the order, and which also had been partly, if not fully, paid for. But that the sale and purchase of the bonds here in question had been perfected we think very clearly appears by the undisputed evidence in the case. Indeed, the witness Glenn, the seller's representative in the matter, several times so admits, saying in one place in his testimony:

"The bonds were to be paid for here in Portland and merely sent to Lock Haven. There was no sight draft to be attached, because they had already been paid for."

We are of the opinion that the cases of Elgee Cotton Cases, 22 Wall. 180, 22 L. Ed. 863, Hatch v. Standard Oil Co., 100 U. S. 124, 136, 25 L. Ed. 554, Harris v. Egger, 226 Fed. 389, 141 C. C. A. 219, H. Baars & Co. v. Mitchell, 154 Fed. 322, 83 C. C. A. 466, and McElwee v. Metropolitan L. V. R. Co., 69 Fed. 302, 16 C. C. A. 232, fully sustain our conclusion.

The judgment is reversed, and the cause remanded to the court below for further proceedings in accordance with the views above expressed.