## HATCH v. OIL COMPANY.

A. & B. agreed, by a contract in writing, to manufacture for C., at a stipulated price, a quantity of staves, and to pile them on lands adjoining their mill, which were leased to him. The contract provided that, on the staves being counted from week to week, A. & B. were to be entitled to a certain percentage of the price of the number ascertained; that upon such piling and counting the delivery should be deemed complete, and the staves were thenceforth to be absolutely and unconditionally the property of C. Before the day when all were to be furnished, and full payments made, a creditor of A. & B. caused his execution to be levied upon the staves which had been counted and piled, most of them being then upon the leased lands and the remainder upon a contiguous tract. The stipulated percentage had also been paid. The lease and contract were not recorded nor filed, but the contract was made in good faith. *Held*, that the title to the staves was in C., and they were not subject to the execution.

ERROR to the Circuit Court of the United States for the Eastern District of Michigan.

The Standard Oil Company of Cleveland brought replevin against Alonzo S. Hatch for a quantity of staves whereof it claimed to be the owner, which he, as sheriff of Lapeer County, Michigan, had seized under and by virtue of certain attachments and executions sued out against the property of John J. and Alfred E. Merritt.

There was a verdict in favor of the company; and judgment having been rendered thereon, Hatch sued out this writ of error.

The assignment of errors is set out in the opinion of the court.

The facts giving rise to the litigation are substantially as follows : —

An agreement in writing was entered into March 11, 1874, between the company, an Ohio corporation, and said Merritts,

who were residents of said county, whereby the latter sold to the company one million of oil-barrel staves, to be sawed of certain dimensions, and manufactured from good, sound, white oak. They were to be delivered on board cars in Cleveland, Ohio, on or before the first day of June, 1875. The company was to receive them as fast as they were inspected, and pay therefor the sum of $30 per thousand.

Aug. 28, 1874, before the staves were furnished, the parties entered into a new contract, providing that, subject to certain modifications thereinafter mentioned, the former contract was to continue, and that said Merritts shall make the staves, and, as fast as they are sawed, deliver them properly piled in some convenient place, to be agreed upon by the parties, on land in Deerfield, Lapeer County, controlled by the company; that the company shall furnish a man to count the staves from week to week, who, when they shall be so piled and counted, shall give the Merritts a certificate of the amount piled, upon the presentation of which to the company it shall pay $17 a thousand as part of the purchase price of the staves; that upon the piling and counting of them, as provided in the contract, " the delivery of the same shall be deemed complete, and said staves then become and thenceforth be the property of the second party absolutely and unconditionally; " that the Merritts, " as agents of the Standard Oil Company," at their own expense shall, on or about the fifteenth day of August, 1875, begin to draw, ship, and forward the staves to the company at the rate of not less than one hundred thousand per month; that the staves shall be allowed to remain piled for the period of three months before the company shall have the privilege of calling for the shipment of the same, but that it shall be the privilege of the company to insist that they shall remain piled for the period of eight months before the shipment; that the whole quantity shall be delivered by Jan. 1, 1876; that if the shipment of them shall be delayed beyond the period of eight months, and not at the request of the company, then the Merritts shall pay interest, and in addition thereto the cost of insuring; that the company shall have the privilege of calling for the shipment direct from the saw; that the company shall pay the balance of the contract price, deducting interest therefrom at ten per

cent per annum on the advances of $17 per thousand from the time paid until the staves shall be received at Cleveland, and also the cost of insuring them against loss by fire after delivery at Lapeer, the amount of said insurance to be $18 per thousand; that if they shall be destroyed by fire before delivery at Cleveland, the loss above said $18 per thousand to fall upon the Merritts; that if the latter shall fail to draw, ship, and forward the staves as agreed, then the company shall be authorized to procure the same to be done, and deduct the necessary expenses from the balance of the contract price, also ten per cent interest on advances and insurance premium paid by them; and that if any balance of the contract price then remains due to the Merritts, the company shall pay the same; but if the advances upon that price, interest, insurance, and the cost and expenses of shipment exceed the balance due upon such price, the Merritts, on demand, shall pay the same.

The Merritts leased, Aug. 28, 1874, to the company a tract of land adjoining their mill, and shortly thereafter began to manufacture the staves and pile them on that tract. One Donely was employed by the company to count them. His certificates of the number were from time to time given, and advanced payments were, to the sum of $15,148, made thereon by the company. Its agent, accompanied by one of the Merritts, made, July 10, 1875, a count of the staves, the number being seven hundred and eighty thousand. About fifty thousand of them were piled upon land immediately adjoining that tract. After they had been counted, Hatch made the levies in question.

The contracts and lease were made in good faith, but neither was recorded or filed in any public office.

At their dates, and during the transactions under them, the statute of Michigan contained the following provisions, to wit:—

"4703: SECT. 7. Every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged, or assigned, shall

be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith, and without any intent to defraud such creditors or purchasers."

"4706: SECT. 10. Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the mortgagor resides."

The chief controversy below was, whether, under the contract, the title to the staves in controversy, at the time when they were seized by Hatch, had vested in the company as vendee or as mortgagee.

*Mr. Ashley Pond* for the plaintiff.

1. The interest of the company in the staves at the time they were seized by Hatch upon process against the Merritts was that of a mortgagee, the legal title remaining in the Merritts as owners.

2. Up to that time there had been no delivery to the company, and no actual and continued change of possession, within the meaning of sect. 4703 of the statutes of Michigan.

3. There being no such change of possession, actual notice of the unfiled mortgage would not render the instrument valid against creditors. Such has been the uniform ruling where similar statutes have been enacted. *Tyler* v. *Strang*, 21 Barb. (N. Y.) 198; *Farmers' Loan & Trust Co.* v. *Hendrickson*, 25 id. 484; *Stevens* v. *Railroad Company*, 31 id. 590; *Robinson* v. *Willoughby*, 70 N. C. 358; *Bevans* v. *Bolton*, 31 Mo. 437. Were the law otherwise, there was no proof of such notice to Hatch or to creditors.

4. Assuming that the contract operated as a sale, and not as a mortgage, the title to the fifty thousand staves not piled

upon the land covered by the lease had not, at the time they were seized, passed from the Merritts to the company.

*Mr. F. H. Canfield, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Contracts for the purchase and sale of chattels, if complete and unconditional and not within the Statute of Frauds, are sufficient, as between the parties, to vest the property in the purchaser, even without delivery; the rule being that such a contract constitutes a sale of the thing, and that its effect is, if not prejudicial to creditors, to transfer the property to the purchaser against every person not holding the same under a *bona fide* title for a valuable consideration without notice. *The Sarah Ann*, 2 Sumn. 211; *Gibson* v. *Stevens*, 8 How. 384, 399; 2 Kent, Com. (12th ed.) 493; *Leonard* v. *Davis*, 1 Black, 476–483.

Nine hundred and forty-four thousand white-oak barrel-staves, of the value of $17,500, were attached by the defendant as sheriff of the county, under certain processes mesne and final, which he held for service against the manufacturers of the staves, to secure certain debts which they owed to their creditors. No irregularity in the proceedings is suggested, but the plaintiffs claimed to be the owners of the staves by purchase from the manufacturers, and they brought replevin to recover the property. Service was made, and the defendant appeared and demanded a trial of the matters set forth in the declaration. Issue having been joined between the parties, they went to trial, and the verdict and judgment were in favor of the plaintiffs. Exceptions were filed by the defendant, and he sued out the present writ of error.

Errors assigned in the court are as follows: 1. That the court erred in instructing the jury that as soon as the staves were piled and counted, as provided in the second agreement, the title to the same vested in the plaintiff company as vendee, and in refusing to instruct the jury that the only interest the plaintiffs acquired in the staves before they were delivered was as security for advances in the nature of a mortgage interest. 2. That the court erred in refusing to instruct the jury that if there was no actual delivery of the property and change of

possession the agreement of sale was void as against the creditors of the manufacturers, because not recorded as required by statute. 3. That the court erred in refusing to instruct the jury that if the evidence did not show that the fifty thousand staves not piled on the leased land were not counted, the title to that parcel did not pass to the plaintiffs for any purpose, and that the defendant, as to that parcel, was entitled to their verdict. 4. That the court erred in refusing to instruct the jury that under the agreement no title to any of the staves passed to the plaintiffs until they were actually placed upon the leased land and were counted by the designated person, and in instructing the jury that the title to the staves piled near the leased land passed to the plaintiffs. 5. That the court erred in refusing to instruct the jury that no title to any staves passed to the plaintiffs other than those contracted to be sold by the first agreement, and that if the jury find that there was any portion of the staves replevied not of that description, that as to such portion the plaintiffs are not entitled to recover. 6. That the court erred in excluding the testimony offered by the defendant, as set forth in the record.

Sufficient appears to show that the manufacturers of the staves, on the day alleged, contracted with the plaintiffs to sell them one million of white-oak barrel-staves of certain described dimensions, to be delivered as therein provided, for the price of $30 per thousand, subject to count and inspection by the plaintiffs, who agreed to receive and pay for the same as fast as inspected. But before the staves had been furnished, to wit, on the 28th of August in the same year, the parties entered into a new agreement in regard to the staves, in which they refer to the prior one, and stipulate that it is to continue in operation, subject to modifications made in the new contract, of which the following are very material to the present investigation: 1. That the manufacturers shall make and deliver the staves properly piled in some convenient place, to be agreed between the parties, on land in Deerfield, to be controlled by the plaintiffs, and that the delivery shall be made as fast as the staves are sawed. 2. That the plaintiff shall furnish a man to count the staves from week to week as the same shall be piled. 3. That when the staves shall be so piled and

counted, the person counting the same shall give the manufac-
turers a certificate of the amount, which, when presented to
the plaintiffs, shall entitle the party to a payment of $17 per
thousand as part of the purchase price.    4. That upon the
piling and counting of the staves as provided, " the delivery
of the same shall be deemed complete, and that said staves
shall then become and thenceforth be the property of the
plaintiffs absolutely and unconditionally."

Other material modifications of the first agreement were
made by the second, some of which it is not deemed necessary
to consider in disposing of the case.

Early measures were adopted to perfect the arrangement, as
appears from the fact that the manufacturers, October 4 in the
same year, leased to the plaintiffs a small tract of land to be
used for piling and storing the staves ; and the case shows that
all the staves except fifty thousand were piled on that site, the
fifty thousand staves being piled on land owned by the manu-
facturers, about one hundred or one hundred and fifty feet
distant from the pile on the leased tract, on which were cer-
tain buildings owned and occupied by the lessors, the mill
where the staves were manufactured being situated on the
same section a little distant from the other buildings.    None
of the staves were manufactured when the contracts were
made.

It was admitted by the plaintiffs that the lease was never
filed in the clerk's office and that it was never recorded in the
office of the county register of deeds.    Certain admissions were
also made by the defendant, as follows: That the parties to
the contracts acted in good faith in making the same, and that
the contracts and lease were duly executed ; that all the staves
seized were manufactured by the said contractors, and that all
except fifty thousand of the same were piled on the leased
tract.

Nothing was required at common law to give validity to a
sale of personal property except the mutual assent of the par-
ties to the contract.    As soon as it was shown by competent
evidence that it was agreed by mutual assent that the one
should transfer the absolute property in the thing to the other
for a money price, the contract was considered as completely

proven and binding on both parties. If the property by the terms of the agreement passed immediately to the buyer, the contract was deemed a bargain and sale; but if the property in the thing sold was to remain for a time in the seller, and only to pass to the buyer at a future time or on certain conditions inconsistent with its immediate transfer, the contract was deemed an executory agreement. Contracts of the kind are made in both forms, and both are equally legal and valid; but the rights which the parties acquire under the one are very different from those secured under the other. Ambiguity or incompleteness of language in the one or the other frequently leads to litigation; but it is ordinarily correct to say, that whenever a controversy arises in such a case as to the true character of the agreement, the question is rather one of intention than of strict law, the general rule being that the agreement is just what the parties intended to make it, if the intent can be collected from the language employed, the subject-matter, and the attendant circumstances.

Where the specific goods to which the contract is to attach are not specified, the ordinary conclusion is that the parties only contemplated an executory agreement. Reported cases illustrate and confirm that proposition, and many show that where the goods to be transferred are clearly specified and the terms of sale, including the price, are explicitly given, the property, as between the parties, passes to the buyer even without actual payment or delivery. 2 Kent, Com. (12th ed.) 492; *Tome* v. *Dubois*, 6 Wall. 548, 554; *Carpenter* v. *Hale*, 8 Gray (Mass.), 157; *Martineau* v. *Kitching*, Law Rep. 7 Q. B. 436, 449; Story, Sales (4th ed.), sect. 300.

Standard authorities also show that where there is no manifestation of intention, except what arises from the terms of sale, the presumption is, if the thing to be sold is specified and it is ready for the immediate delivery, that the contract is an actual sale, unless there is something in the subject-matter or attendant circumstances to indicate a different intention. Well-founded doubt upon that subject cannot be entertained if the terms of bargain and sale, including the price, are explicit; but when the thing to be sold is not specified, or if when specified something remains to be done to the same by the vendor, either

to put it into a deliverable state or to ascertain the price, the contract is only executory. In the former case there is no reason for imputing to the parties any intention to suspend the transfer, inasmuch as the thing to be sold and the price have been specified and agreed by mutual consent, and nothing remains to be done. Quite unlike that, something material remains to be done by the seller in the latter case before delivery, from which it may be presumed that the parties intended to make the transfer dependent upon the performance of the things yet to be done.

Suppose that is so, still every presumption of the kind must yield to proof of a contrary intent, and it may safely be affirmed that the parties may effectually agree that the property in the specific thing sold, if ready for delivery, shall pass to the buyer before such requirements are fulfilled, even though the thing remains in the possession of the seller.

Where a bargain is made for the purchase of goods, and nothing is said about payment or delivery, Bailey, J., said the property passes immediately, so as to cast upon the purchaser all future risk, if nothing remains to be done to the goods, although he cannot take them away without paying the price. *Simmons* v. *Swift*, 5 B. & C. 857.

Sales of goods not specified stand upon a different footing, the general rule being that no property in such goods passes until delivery, because until then the very goods sold are not ascertained. But where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take the same and to pay the stipulated price, the parties, says Parke, J., are thus in the same situation as they would be after a delivery of goods under a general contract, for the reason that the very appropriation of the chattel is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and to pay the price is equivalent to his accepting possession. *Dixon* v. *Yates*, 5 Barn. & Adol. 313, 340; Shep. Touch. 224.

When the agreement for sale is of a thing not specified, or for an article not manufactured, or of a certain quantity of goods in general without any identification of them or an appropriation of the same to the contract, or when something

remains to be done to put the goods into a deliverable state, or to ascertain the price to be paid by the buyer, the contract is merely an executory agreement, unless it contains words warranting a different construction, or there be something in the subject-matter or the circumstances to indicate a different intention. Benjamin, Sales (2d ed.), 257; Blackburn, Sales, 151; *Young* v. *Matthews*, Law Rep. 2 C. P. 127–129; *Logan* v. *LeMesurier*, 6 Moore P. C. C. 116; *Ogg* v. *Shuter*, Law Rep. 10 C. P. 159–162; *Langton* v. *Higgins*, 4 H. & N. 400; *Turley* v. *Bates*, 2 H. & C. 200–208.

Exactly the same views are expressed by the Supreme Court of the State as those maintained in the preceding cases. Speaking to the same point, Cooley, C. J., says, when, under a contract for the purchase of personal property, something remains to be done to identify the property or to put it in a condition for delivery, or to determine the sum that shall be paid for it, the presumption is always very strong, that by the understanding of the parties the title is not to pass until such act has been fully accomplished. Such a presumption, however, is by no means conclusive; for if one bargains with another for the purchase of such property, and the parties agree that what they do in respect to its transfer shall have the effect to vest the title in the buyer, he will become the owner, as the question is merely one of mutual assent, the rule being, that if the minds of the parties have met, and they have agreed that the title shall pass, nothing further, as between themselves, is required, unless the case is one within the Statute of Frauds. Consequently, it was held by the same court that if one purchases gold bullion by weight, and receives delivery before it becomes convenient to weigh it, and on the understanding that the weighing shall be done afterwards, the bullion would become the property of the buyer and be at his risk, unless there were some qualifying circumstances in the case. *Wilkinson* v. *Holiday*, 33 Mich. 386–388; *Lingham* v. *Eggleston*, 27 id. 324, 328; *Ortman* v. *Green*, 26 id. 209, 212.

Decisions of other States are to the same effect, of which the following are examples: *Pacific Iron Works* v. *Long Island Railroad Co.*, 62 N. Y. 272, 274; *Groff* v. *Belche*, 62 Mo. 400–402; *Morse* v. *Sherman*, 106 Mass. 430, 433; *Riddle* v. *Varnum*, 20

Pick. (Mass.) 280, 283; *Chapman* v. *Shepard*, 39 Conn. 413–419; *Fuller* v. *Bean*, 34 N. H. 290–300.

Modern decisions of the most recent date support the proposition that a contract for the sale of specific ascertained goods vests the property immediately in the buyer, and that it gives to the seller a right to the price, unless it is shown that such was not the intention of the parties. *Gilmore* v. *Supple*, 11 Moore P. C. C. 551; Benjamin, Sales (2d ed.), 280; *Dunlop* v. *Lambert*, 6 Cl. & Fin. 600; *Calcutta Co.* v. *DeMattos*, 32 Law J. Rep. N. s. Q. B. 322–338.

"There is no rule of law," says Blackburn, J., in the case last cited, "to prevent the parties in such cases from making whatever bargain they please. If they use words in the contract showing that they intend that the goods shall be shipped by the person who is to supply the same, on the terms that when shipped they shall be the consignee's property and at his risk, so that the vendor shall be paid for them whether delivered at the port of destination or not, this intention is effectual." s. c. 33 id. 214; 11 W. R. 1024, 1027.

Support in some of the cases cited is found to the theory that the terms of the bargain and sale in this case, inasmuch as they indicate that the intention of the sellers was to appropriate the staves when manufactured to the contract, are sufficient to vest the property in the buyer when the agreed sum to be advanced was paid even without any delivery; but it is quite unnecessary to decide that question in view of the evidence and what follows in the second contract between the parties.

Provision was made that a convenient place should be designated by the parties where the staves should be piled as fast as they should be sawed. Such a place was provided to the acceptance of both parties, and the plaintiffs furnished a man as agreed to count the same from week to week as the staves were piled. Enough appears to show that all the staves, except as aforesaid, were piled and delivered at that agreed place.

In a contract of sale, if no place of delivery is specified in the contract, the articles sold must, in general, be delivered at the place where they are at the time of the sale, unless some

other place is required by the nature of the article or by the usage of the trade or the previous course of dealing between the parties, or is to be inferred from the circumstances of the case. Decided cases to that effect are numerous; but the rule is universal, that if a place of delivery is prescribed as a part of the contract the vendee is not bound to accept a tender of the goods made in any other place, nor is the vendor obliged to make a tender elsewhere. Story, Sales (4th ed.), sect. 308.

Where, by the terms of the contract, the article is to be delivered at a particular place, the seller, before he can recover his pay, is bound to prove the delivery at that place. *Savage Manuf. Co.* v. *Armstrong*, 19 Me. 147.

So when the intention of the parties as to the place of delivery can be collected from the contract, and the circumstances proved in relation to it, the delivery should be made at such place, even though some alterations have been made in the place designated. *Howard* v. *Miner*, 20 id. 325–330.

Much discussion is certainly unnecessary to show that, where the terms of bargain and sale are in the usual form, an absolute delivery of the article sold vests the title in the purchaser, as the authorities upon the subject to that effect are numerous, unanimous, and decisive. *Hyde* v. *Lathrop*, 3 Keyes (N. Y.), 597; *Macomber* v. *Parker*, 13 Pick. (Mass.) 175, 183.

In an action for goods sold and delivered, if the plaintiff proves delivery at the place agreed and that there remained nothing further for him to do, he need not show an acceptance by the defendant. *Nichols* v. *Morse*, 100 Mass. 523.

Even when a place of delivery is specified, it does not necessarily follow that the title does not pass before they reach the designated place, as that may depend upon the intention of the parties; and whether they did or did not intend that the title should vest before that is a question for the jury, to be determined by the words, acts, and conduct of the parties and all the circumstances. *Dyer* v. *Libbey*, 61 Me. 45.

Where it appears that there has been a complete delivery of the property in accordance with the terms of a sale, the title passes, although there remains something to be done in order to ascertain the total value of the goods at the rates specified in the contract. *Burrows* v. *Whitaker*, 71 N. Y. 291–296; *Graft*

v. *Fitch*, 58 Ill. 373 ; *Russell* v. *Carrington*, 42 N. Y. 118, 125 ; *Terry* v. *Wheeler*, 25 id. 520, 525.

Beyond controversy, such must be the rule in this case, because the contract provides that upon the piling and counting the staves as required by the instrument the delivery of the same shall be deemed complete, and that the staves shall then become and henceforth be the property of the plaintiffs absolutely and unconditionally.

Except the fifty thousand before named, all the staves were so piled and counted ; and the case shows that the person designated to count the same approved fourteen certificates specifying the respective amounts of the several parcels delivered, and that the plaintiffs paid on each the $17 per thousand advance as agreed, amounting in all to $15,148.

Personal property may be purchased in an unfinished condition, and the buyer may acquire the title to the same though the possession be retained by the vendor in order that he may fit it for delivery, if the intention of the parties to that effect is fully proved. *Elgee Cotton Cases*, 22 Wall. 180.

After an executory contract has been made, it may be converted into a complete bargain and sale by specifying the goods to which the contract is to attach, or, in legal phrase, by the appropriation of specific goods to the contract, as the sole element deficient in a perfect sale is thus supplied. Benjamin, Sales (2d ed.), 263 ; *Rohde* v. *Thwaites*, 6 B. & C. 388.

Examples of the kind are numerous in cases where the goods are not specified, and the decided cases show that if the seller subsequently selects the goods and the buyer adopts his acts, the contract which before was a mere agreement is converted into an actual sale and the property passes to the buyer. One hundred quarters of barley out of a bulk in a granary were agreed to be purchased by the plaintiff, he having agreed to send his own sacks, in which the same might be conveyed to an agreed place. He sent sacks enough to contain a certain part of the barley, which the seller filled, but, being on the eve of bankruptcy, he refused to deliver any part of the quantity sold, and emptied the barley in the sacks back into the bulk in the granary. Held, in an action brought to recover the whole amount, that the quantity placed in the sacks passed to the

purchaser, as that part was appropriated by the bankrupt to the plaintiff. *Aldridge* v. *Johnson*, 7 E. & B. 885 ; *Browne* v. *Hare*, 3 H. & N. 484 ; s. c. 4 id. 821 ; *Tregeles* v. *Sewell*, 7 id. 573.

Stipulations in respect to the forwarding and shipping the staves are also contained in the second agreement; but it is not necessary to enter into any discussion of that topic, as it appears that the manufacturers, if they did any thing in that regard, were to act as the agents of the plaintiffs, and if they failed to transport the same to the place of shipment seasonably, the plaintiffs were authorized to do it at their expense. Nor is it necessary to discuss the stipulations as to insurance, as it is clear that they contain nothing inconsistent with the theory that the property vested in the plaintiffs as soon as the staves were piled and delivered at the agreed place of delivery.

Proof of a satisfactory character was exhibited that much the greater portion of the staves were piled upon the leased site, and that the residue were piled on land adjoining, and within a hundred or a hundred and fifty feet from the larger pile. Witnesses examined the staves piled there several times, and one of them testified that he was there July 10, 1875, with one of the sellers, and made a thorough count of the staves, the number counted being 780,000, and he states that he counted the staves in both piles, and that there were no other white-oak staves on the premises.

Taken as a whole, the evidence shows that the parties treated both piles of the staves as delivered under the contract, the one as much as the other, and that they regarded both as properly included in the adjustment of/the amounts to be advanced. When the agent of the plaintiffs went there, as before explained, with one of the sellers, it is certain that they counted both piles, and it is clear that in view of the evidence and the circumstances the jury were warranted in finding that the property in all the white-oak staves piled there passed to the plaintiffs when they were piled and delivered at that place, neither party having objected to the place where the smaller parcel was piled.

Actual delivery of the staves having been proved, it is not necessary to make any reply to the defence set up under the

State statute in respect to the sale of goods unaccompanied by a change of possession. Objection is also made that the lease of the premises designated as the place of delivery was not recorded, which is so obviously without merit that it requires no consideration.

Viewed in the light of these suggestions, it is obvious that the first five assignments of error must be overruled.

Exception was also taken to the ruling of the court below in excluding certain testimony offered by the defendant to show that the staves were not cut and made at the time some of the certificates were given to secure the advance; and to show that the staves included in the small pile were never in fact counted, and that no certificate specially applicable to them was ever given. Responsive to the objection of the defendant, the court below remarked, that, if the staves were subsequently piled there to the satisfaction of the plaintiffs, the title passed, it appearing that the certificates were given and the advance paid, which is all that need be said upon the subject, as it is plain that the ruling is without just exception.

*Judgment affirmed.*