ZANK, Appellant, vs. JONES and another, Respondents.

*October 11—November 8, 1922.*

*Sales: When title passes: Place of delivery stated: Risk of loss.*

1. Where a contract for the sale of potatoes required the seller to deliver them to the buyer at freight cars at a named station, under the Uniform Sales Act (sub. 5, sec. 1684*t*—19, Stats.) title did not pass until the seller had made delivery

at the station; and where the potatoes froze after being sorted and sacked but before delivery, the loss fell on the seller.

2. The fact that employees of the buyers, who were assisting the seller in sorting, sacking, and weighing the potatoes at the place of shipment, suggested that they be moved to the seller's machine shed to avoid frost, did not amount to an 'absolute appropriation of the potatoes on the part of the buyers, passing title to the potatoes immediately.

3. If no place of delivery is specified in the contract the goods must, in general, be delivered at the place where they are at the time of sale; but where a place of delivery is prescribed, the vendee is not bound to accept tender at any other place nor is the vendor pledged to make tender elsewhere.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge.  *Affirmed.*

This is an appeal by the plaintiff from a judgment dismissing plaintiff's complaint, and for costs in favor of the defendants.

On November 5, 1920, the defendants agreed to purchase from the plaintiff 179 sacks of potatoes, containing 150 pounds each, for the sum of $1.50 per hundredweight. It was agreed that the potatoes were to be sorted, placed in sacks and weighed, and were to be delivered by the plaintiff at the cars to be furnished by the defendants at Augusta, Wisconsin.

On November 7th the defendants furnished a sorting machine and several men, and both the plaintiff and his men and the defendants' help proceeded to sort the potatoes. The process of sorting, sacking, and weighing the potatoes continued from Monday, the 8th day of November, until Tuesday afternoon at about 5 o'clock, of the same week. On Tuesday afternoon there was a sudden drop in the temperature and it was thought that the potatoes might freeze that night, and all of the potatoes were thereupon removed to a machine shed belonging to the plaintiff.  Thereafter the potatoes in the machine shed were covered with blankets and other material, but the cold was so severe that on Tuesday night they froze.  Thereafter sixty-four sacks

of these potatoes were removed by the plaintiff into his cellar. On Friday morning of the same week the plaintiff loaded two wagonloads of the potatoes preparatory to delivery of the same to the cars at Augusta, and at that time the employees of the defendants appeared at plaintiff's farm, under instructions from the defendants to examine the potatoes and to refuse acceptance if they were frozen. Defendants' employees, upon discovering the condition of the potatoes, refused to accept them, and on their recommendation the potatoes in the machine shed were removed to a neighbor's farm, where they were permitted to remain until the following spring. The plaintiff sold a portion of the potatoes stored in the cellar and realized therefrom the sum of $66. The balance of the potatoes were so badly damaged as to make them unsalable. The evidence in the case is practically undisputed.

The case was submitted to the jury on the following special verdict:

"(1) On November 5, 1920, when the contract was made for the purchase of the potatoes, was it the intention of the parties that the title and ownership of the potatoes should pass from the plaintiff to the defendants as soon as the potatoes were assorted and sacked, before the payment of the purchase price and before their delivery to the defendants at Augusta? A. Yes.

"(2) After the potatoes were sorted, sacked, what was it reasonably worth to haul them to Augusta and deliver them to the defendants, according to the terms of the contract? A. $24.

"(3) What was the reasonable value of the portion of the potatoes which the plaintiff afterward retained and disposed of for his own benefit? A. $66."

Plaintiff thereupon moved for judgment in his favor for the total amount of the contract price; and the defendants thereupon moved to change the answer of question number 1 of the special verdict from "Yes" to "No," and for judgment in their favor dismissing the plaintiff's complaint with costs. The motion of the defendants was granted by the court, and judgment was accordingly entered.

For the appellant there was a brief by *E. M. Bradford* of Augusta and *Linderman & Ramsdell* of Eau Claire, and oral argument by *G. O. Linderman.*

For the respondents there was a brief by *Sturdevant & Farr* of Eau Claire, and oral argument by *L. M. Sturdevant.*

DOERFLER, J.    The only material question in the case, as stated by the trial court in its opinion, involves the sufficiency of the evidence to sustain the finding of the jury as to the passing of the title. The following provisions of the Uniform Sales Statutes are involved in the determination of this question:

Sec. 1684*t*—18 provides:

"1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Sec. 1684*t*—19 provides:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: . . .

"4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

"(2) Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not), for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to

the contract, *except* in the cases provided for in the next rule and in section 1684*t*—20. This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words 'collect on delivery' or their equivalents.

"5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

On the part of the plaintiff it is contended that sub. 4 of sec. 1684*t*—19 is applicable to this case, and that when the goods were sorted, sacked, and weighed there was an unconditional appropriation of the potatoes, and that the title therein at that time passed to the buyer. On the other hand, it is contended by the defendants that sub. 5 of sec. 1684*t*—19 is applicable for the reason that the contract required the seller to deliver the goods to the buyer at a particular place, and that the goods were to be paid for by the buyer at the time they were delivered at Augusta, ready to be loaded there on board of the cars.

Had the parties not included as a part of the contract of sale a provision that the goods were to be delivered by the seller to the buyer at Augusta, there can be no question but that sub. 4 (1) of sec. 1684*t*—19 would be clearly applicable. The paragraph referred to clearly embraces all such contracts of sale which provide for the ascertainment and setting aside of goods by description so as to place them in a deliverable state, and does not involve goods so ascertained and set aside, which under the terms of the contract are to be delivered to a certain person at a certain place. In order to reach the latter situation the legislature has seen fit to enact a special provision, which is known as sub. 5 of sec. 1684*t*—19, and this provision is clearly applicable to the facts in a case like the instant one.

Sub. 4 (2) of sec. 1684*t*—19 sheds considerable light

upon the intention of the legislature. That paragraph also evidently contemplates a situation where no express provision is made in the contract with respect to delivery, and so this paragraph provides that where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not), for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract; but this paragraph contains this exception: "except in the cases provided for in the next rule and in section 1684$t$—20." The provisions of sec. 1684$t$—20 are not applicable to this case, but sub. 5 of sec. 1684$t$—19, being the next rule referred to, is clearly applicable to the case, and fully covers the situation presented here.

It would therefore appear that the title to these potatoes, as a matter of law, would not pass until the plaintiff had fully complied with the terms of his contract, and such contract provided, first, for the sorting of the potatoes; second, the sacking of the same; third, the weighing process; and fourth, the delivery of the potatoes at Augusta. The plaintiff complied with all the terms of his contract with the exception of the delivery of the goods, and as the result whatever loss was sustained by reason of the damage to the potatoes must be borne by him.

It is claimed on the part of the plaintiff that inasmuch as it appears from the evidence that the defendants sorted, weighed, and sacked the potatoes, and that it was suggested by the defendants' agents that they be placed in the machine shed until they could be delivered, such evidence amounted to an absolute appropriation of the potatoes on the defendants' part, and that the title to the potatoes immediately thereafter passed. In whatever was done to the potatoes up to the time they were damaged both of the parties participated. The plaintiff's acts were directed toward preventing damage to the potatoes, and the suggestions of the defendants' employees were made in the interests of their em-

ployers so that the potatoes when delivered would be in good marketable condition. There is nothing unusual or extraordinary about the transaction. Each party intended to protect his own interests.

We quote the following with approval from the opinion of the learned circuit judge:

"In *Hatch v. Standard Oil Co.* 100 U. S. 124, the court said that if no place of delivery is specified in the contract the articles sold must, in general, be delivered at the place where they are at the time of the sale. And also said: 'Decided cases to that effect are numerous, but the rule is universal that if the place of delivery is prescribed as a part of the contract, the vendee is not bound to accept tender of the goods made at any other place, nor is the vendor pledged to make a tender elsewhere." Story, Sales (4th ed.) § 308. See, also, 35 Cyc. 296; 4 Corp. Jur. 1459.

We therefore hold that the decision of this case is governed by sub. 5 of sec. 1684*t*—19, and that the trial court properly changed the answer of the jury to the first question of the special verdict from "Yes" to "No" and ordered judgment in defendants' favor dismissing plaintiff's complaint with costs.

*By the Court.*—Judgment affirmed.