## CALCARA v. UNITED STATES.
### No. 9193.

Circuit Court of Appeals, Eighth Circuit.
Nov. 16, 1931.

Frank D. Rader and Charles S. Walden, both of Kansas City, Mo. (Paul S. Conwell, of Kansas City, Mo., on the brief), for appellant.

Claude E. Curtis, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

STONE, Circuit Judge.

Appellant was charged in an indictment in four counts of violating the National Prohibition Law (27 USCA). The first count was not submitted, and the jury found defendant not guilty on the fourth count. The jury found the defendant guilty on the second count for selling a pint of whisky on January 17, 1930, and on the third count for possessing a pint of whisky, upon the same date and place. There was a sentence of two years' imprisonment on the sale count and of a fine on the possession count. From such judgment this appeal is brought.

I. Appellant argues here three matters. The first is as to the sufficiency of the evidence to support the conviction on the two counts. There can be no sort of question that there is ample evidence to support the conviction on the possession count, and the appellant devotes very little attention to that matter. The real question on the evidence is whether there is sufficient to sustain the conviction on the sale, and the point involved therein is whether a sale was completed, since the whisky never came into actual physical possession of the buyer.

Here the evidence favorable to the prosecution and found true by the jury was that the agent Han and the appellant were total strangers. Han stopped his automobile in front of appellant's store and motioned to him. He came out to the car and asked, "What do you want?" Either Han or his companion said, "We want some whiskey." Also Han said, "Bring us some of that dollar kind, I don't want any of that seventy-five cent kind." Appellant said, "All right," and left, returning in a short time with a pint

of whisky "and reached into the car door with the pint of whiskey. Witness [Han] held up the dollar bill in his left hand and the defendant reached his left hand just inside of the car door. Witness [Han] put the dollar bill in the defendant's hand and then reached out the car door and caught defendant around the neck and said, 'you are under arrest, I am a Federal agent.' He struggled for a moment and then said, 'All right.' When the Italian [defendant] said 'All right,' witness started to get out of the car and that was the time the Italian threw the whisky with his right hand over the top and to the rear of the car; that occurred after witness had handed defendant the money and had told defendant that he was a Federal officer."

It is clear from this evidence that the article was definitely identified and was present for the one purpose of this sale (it was even tendered for that purpose—the whisky being offered in the right hand as the money was taken with the left hand), and that the purchase price passed.

■ We are dealing here with the elements of a sale as between the parties thereto. A sale always involves the passage of title to the thing bought and the payment therefor. The parties may make any agreement they desire either as to when title shall pass or as to when payment shall be made. But, whatever that agreement may be, there is no completed sale until the title to the thing sold passes to the buyer in accordance with the agreement. Possession is an attribute of title, but is separable and is often separate therefrom. Hence delivery may precede, be coincident with, or follow the passing of title. Norfolk & West. Ry. Co. v. Sims, 191 U. S. 441, 447, 24 S. Ct. 151, 48 L. Ed. 254. Whether delivery is necessary to pass title is a matter purely of the intention of the parties. Hatch v. Oil Co., 100 U. S. 124, 131, 25 L. Ed. 554. Where no specific intention appears from the contract of the parties the court must take all of the circumstances surrounding the transaction and therefrom declare the intention. In the absence of a specifically appearing intention in what is commonly understood as a "cash" transaction, both parties contemplate the passage of title, and the payment therefor shall be simultaneous. They contemplate also that the possession shall pass at the same time. Under such a transaction the receipt of payment carries the title and the right to immediate possession. The withholding of the possession does not affect either the right thereto or the passage of the title. Here the title

passed with the acceptance of the price, and the sale was completed even though attempted delivery was never fully accomplished. Whitfield v. U. S., 92 U. S. 165, 170, 23 L. Ed. 705; In re Liebig, 255 F. 458, 463 (C. C. A. 2); Harris v. Egger, 226 F. 389, 395 (C. C. A. 6); 35 Cyc. 302-303; also see Hammer v. U. S., 249 F. 336 (C. C. A. 2)—the same rule is in Toney v. Goodley, 57 Mo. App. 235, 241.

II. Related to and governed by what has been said above is another matter argued here which is an attack upon that part of the charge of the court defining a sale. The definition given in the charge is clearly within the principles of law stated above in connection with the evidence of sale.

■ III. The third matter argued here has to do with certain statements in the charge of the court. The first of these attacks upon the charge is that the court erred in referring to the National Prohibition Act, as follows: "Some reference has been made in the argument of this case, which probably should not have been made, to criticism said to exist of the National Prohibition Act. Because of that reference in the argument it is necessary for me to briefly advert to that statement, to advert to it to this extent and to this extent only, that we who are here in this court of justice, all of us, have taken a solemn oath to decide the matters submitted to us according to the law and the evidence; we have nothing to do with criticism of any of the Nation's laws. I would not think of making any reference to such a subject except for what has been said incidentally in the argument, and I am sure that that was not said with any intent that you should be influenced by such criticism, if there is criticism of the laws of the country. I would think I would be doing this jury a gross injustice if I were to insinuate that any member of this jury would be so unworthy as to be influenced by anything except the law in the case. I make no further reference because, as I said, it would possibly impute unworthy motives to a jury which does not deserve any such imputation."

This statement by the court was entirely proper, in view of the adroit reference to the Prohibition Law made by counsel for appellant in his argument, which is as follows: "There is criticism against the Prohibition Law, there will always be criticism against any law that operates to deprive people of their own liberty, of their happiness. This man has borne a good reputation. Can it be said that that means nothing? If a good

reputation means nothing in an hour like this, then why should I, why should you, at all, at any time, at any place try to live a life that we would have a good reputation, if it means nothing at a time like this—I asked this man Lashbrook if he ever bought anything from this man. No, he never. Did you ever see others? No, he never. He didn't know where the stairway was, he didn't know whether it was a two or three story building. He said there were residences right next to it, and the photographs show a vacant lot and in the far corner the apartment building, a three-story six-apartment building. Oh, gentlemen, that is the evidence that they expect you, that Mr. Keyes, in his bald manner stands before you and ask you to send an innocent man down to a felon's cell. I ask you, gentlemen of the jury to consider all the facts in this case in a fair and dispassionate manner and not to let any sympathy for the Prohibition Law or this defendant or anything else sway you. All that this defendant, or any defendant in any court, is entitled to ask is a fair and impartial trial under the law and under the sworn testimony that is credible and worthy of belief."

■ The second matter under attack in the charge is as follows: "Something has been said, and therefore I make reference to that fact, with reference to the penalties, to the severe penalties that have been spoken of in argument, that the law provides. Now, of course that is not a matter that concerns the jury except they are interested in the matter as citizens; the question does not interest them as jurors. The penalties for which this law provides run from a small minimum to a very large maximum penalty, and you know from your general reading the minimum penalty possible to be imposed, and that the maximum penalty possible to be imposed in the most aggravated case is five years imprisonment and a fine of ten thousand dollars. Punishment ranges from a fine of one dollar to that maximum. In a United States Court the punishment is assessed by the court and you gentlemen have been here already long enough to know that the court takes into consideration all the circumstances and assesses, when the facts justify it, lenient penalties, and you can safely leave that matter, as the law leaves it, to the court."

This was justified by repeated statements in the argument of counsel for appellant appealing to the jury not to tear appellant "from the bosom of his family" and place him behind prison bars, and the statement in such argument that the defendant was not re-

quired to take the stand, but that he did so because "the penalty is so severe that they always appear and try, regardless of the privilege, to prove themselves innocent."

■ Another attack upon the charge is because the court, in a brief outline of the evidence for the government, stated: "He was asked by them or by one of them to sell them a pint of whiskey. They testified, or one of them at least testified, that they said to him, 'We want dollar whiskey.' The testimony is that he went back, either into the store or into a stairway—it does not make a particle of difference where he went so far as this case is concerned—and that he came out shortly with a bottle of whiskey."

In the testimony of the main witness for the government it appeared that, after he had told appellant the kind of whisky he wanted, the appellant said, " 'All right' and went around the front of 522 Harrison and entered a doorway." Appellant devoted considerable attention in the testimony endeavoring to show that this witness was not in a physical position to see appellant entering a doorway and that there was, in fact, no such doorway. It is argued that the last sentence above quoted destroyed the effect of this impeaching testimony. Counsel for appellant greatly stressed this matter in his argument, and told the jury that, if they should find that the witness for the government had testified "to a lie" in that particular, then they were justified in not believing him on the rest of his testimony. Not only was the statement of the court entirely proper because it made no difference upon the issues of the case (which the court was then defining) where the whisky came from, and, regarding the matter of credibility, with which this evidence of appellant was alone concerned, the court instructed the jury that they were the judges of the credibility of the witnesses and that, if they believed any witness had sworn falsely to any material fact, then they might disregard the whole or any part of his testimony.

■ Another attack upon the charge is that the court set forth in detail the evidence of the government, which was detrimental to the defendant, and failed to fairly set forth the evidence produced by him upon request of counsel so to do. In order to present to the jury clearly the controversy of fact (whether a sale had been consummated), the court stated the evidence in outline and expressly declared: "I make reference to them in order that I may explain more fully the law which

applies to them. It is contended by the defendant that these facts, if proved, do not constitute a crime." At the conclusion of the charge, counsel for appellant excepted on the ground that the court commented upon the evidence of the government and not on that of the defendant, whereupon the court said, "I don't recall that I commented on the evidence introduced by the Government except in connection with my explanation of what are the essentials of a sale," and then made some comment or outline of the testimony for the defendant. Thereafter there was no exception. Therefore this attack is not only unjustified, but is not open for examination here.

■ Another attack upon the charge is upon the statement therein, as follows: "The verdict of the jury in a criminal case in the United States Courts, and in all courts in a criminal case, must be unanimous, but, as I have said before, as you all know without its being said, every juror should, in arriving at his conclusions, consider the views of his fellow jurors. When twelve men are called upon to act upon any matter, each of them considers the views of the other men. None of you ought to [say], 'I am right and all the rest are wrong,' [but each ought to consider the view of his fellow,] with an honest purpose, which I know you gentlemen have, of arriving at a decision of the case. Of course your verdict, when it is reached, should and must reflect the conscientious judgment of each juror."

The above-quoted statement is not at all objectionable as in any way tending to influence any juror not to exercise his individual judgment.

■ The last attack upon the charge is a statement made after the return of the jury asking for further instructions in regard to appellant's intention with respect to the sale. Again the court explained, at length, the law as applied to the facts of a sale, and therein made the statement, as follows: "I never comment upon the fact which is really in dispute, although I have the right to do that, and I express no opinion at all; even to help you, if I might thereby, I express no opinion at all as to whether this defendant did go back into his place of business and bring out a bottle of whiskey and throw it over the car. That is the really controverted issue. But if it will help you to express my view as to what is not controverted issue— what I say is not binding upon you—I will go that far. If you believe that this defend-

ant came out from this place of business or from somewhere else with a bottle of whiskey in his hand, after an agreement made between him and the Government agent, and if you believe that he was paid a dollar, and was in the act of handing this whiskey to the Government agent, then I say to you, If I were passing upon the question as to whether he intended to transfer title or not, I would have no difficulty in saying that it was of course his intent to transfer title to that whiskey. But that, as I said, is not binding upon you. It is solely an expression of an opinion upon my part as to what some of you may think is a close legal question. It is really a question of fact."

Under the circumstances here, the statement just quoted was fully justified, as there could be no question that, if the jury believed the facts stated by the court therein, a sale had been, as matter of law, completed.

The judgment is affirmed.