## W. J. HUTCHINS v. R. W. LOCKETT.

1. All matters of defense must be filed in the due order of pleadings, and that order requires that in all cases matters of law should be pleaded before pleas to the merits.

2. A judgment may be impeached in any proceeding upon the ground of fraud.

3. Where the defendant claimed under a judgment rendered in a suit for specific performance, in which the purchase money tendered into court for two hundred acres of the land sued for had been withdrawn after judgment, *held*, that withdrawing the money was a fraud upon the judgment, and related back to its rendition, and nullified the whole.

4. A judgment cannot be void in part and good in part; it must be either valid or void in whole; and where fraud attaches to a part only of a judgment, the whole is a nullity.

APPEAL from Johnson. Tried below before the Hon. Charles Soward.

This was an action of trespass to try title, brought in the District Court of Johnson county, November, 1870, by W. J. Hutchins against R. W. Lockett, to recover 300 acres of a 1360-acre tract of land bought by the plaintiff at the assignee's sale of the bankrupt estate of James L. Farquhar. Defendant claimed the 300 acres by purchase from Luke Blevins, who had recovered judgment for the land, in a suit against Farquhar for specific performance.

Blevins in his suit against Farquhar claimed one hundred acres of the land under an agreement that he should have that amount for protecting Farquhar's land from trespassers, and two hundred acres under contract of sale at seventy-five cents per acre.

Blevins brought his suit in April, 1856, and in January, 1860, tendered the purchase money for the two hundred acres into court. At the July term, 1860, Blevins recovered judgment by default for the land, and obtained an order appointing commissioners to make partition.

Afterwards, Farquhar sued out a writ of injunction, which being dissolved in January, 1861, he appealed to the Supreme Court. Pending the appeal Blevins withdrew the money tendered into court, and in 1868, before the case was finally disposed of, Farquhar went into bankruptcy.

The defendant recovered judgment against the plaintiff dismissing this suit, and plaintiff appealed to the Supreme Court.

The other facts are sufficiently stated in the opinion of the court.

*Simpson & Bledsoe,* for appellant.—The special excep-
tions of defendant to plaintiff's petition were not filed un-
til after the answer to the merits, and should have been
stricken out.   (Drake v. Brander, 8 Texas, 353.)   Blevins
by withdrawing the purchase money after judgment, per-
petrated a fraud, which should vitiate the judgment.
(Norwood v. Cobb, 15 Texas, 504; Caldwell v. Frame, 32
Texas, 310.)   The vendee who pays the purchase money
succeeds to all the rights of his vendor, and takes what-
ever title his vendor may have, or subsequently acquire.
(Mays v. Lewis, 4 Texas, 44; Whitehead v. Foley, 28
Texas.)

*Chandler, Carleton & Robertson,* for appellee.—It was
the defendant's right to demur and plead to the new mat-
ter set up in the amended petition.   (Speake v. Prewitt,
6 Texas, 256; Williams v. Randon, 10 Texas, 77.)

OGDEN, P. J.—The Legislature and courts of this State,
while attempting to do away with many of the rigorous
rules and useless and embarrassing fictions of the common
law, have still very wisely attempted strictly to adhere to
such rules of pleading and practice as tend directly to the
sure and speedy administration of justice.   One of those
rules which are dictated by statute, and have uniformly
been recognized by the courts, requires that all matters
of defense must be filed in the due order of pleading, and
that order requires that in all cases matters of law should
be pleaded before pleas to the merits; and in carrying out
this rule we think the court below erred in entertaining
exceptions to the petition, after an answer to the merits.

On the sixteenth of August, 1871, the plaintiff by leave
of the court filed an amended petition, and on the eigh-
teenth of the same month an answer in the form of a
general denial was filed and the cause continued.   At the

next term defendant filed his exceptions to the original and amended petition, which were sustained by the court, and the cause dismissed, and from this judgment the plaintiff has appealed. We are of the opinion that the court erred in overruling the plaintiff's motion to strike out defendant's general and special exceptions because they were not filed in the due order of pleading.

But if we admit that the error heretofore noticed is insufficient to authorize a reversal of the judgment, we must then look at the plaintiff's pleadings at the time the cause was dismissed, and determine the question, whether he had, in fact, set out in his petition a good cause of action.

There can be no question that the petition set up a good title in the plaintiff, and a good cause of action as against the defendant, provided that in attempting to set out defendant's claim to title in the land in controversy he does not show a superior title in the defendant.

In determining the correctness of the ruling of the court below on the exceptions, we must take the allegations in the plaintiff's petition as true. According to those allegations, in 1854 James L. Farquhar, who was the owner of 2300 acres of land, which includes the land in controversy, made a contract with one Luke Blevins, by which Blevins, in condsideration of 100 acres of the land, agreed to take care of the whole tract and protect the timber on the same; it was further agreed that Farquhar would sell to Blevins 200 acres more of the land, for seventy-five cents per acre; that Blevins, in 1856, brought suit against Farquhar for specific performance of said executory contract; that in 1860 Blevins made a tender into court of $150, the price agreed to be paid for the 200 acres, and at the following term of the court took judgment against Farquhar by default for 300 acres of land, and had commissioners appointed to make partition; Farquhar sued out an injunc-

tion to stay execution of the judgment, and in 1861 said injunction was dissolved, and the cause dismissed, and Farquhar gave notice of an appeal to the Supreme Court; and that thereupon Blevins withdrew the $150, deposited in the court, which was the foundation of his judgment against Farquhar.

This act of withdrawing from the court the purchase money for the land, without which no such judgment could have been rightfully asked or obtained, is claimed to have been such a fraud upon the court and its judgment as to destroy the validity of the latter, and to render it absolutely null and void.

That a judgment rendered by a court of competent jurisdiction cannot be attacked in a collateral proceeding is a rule of almost universal application. Nevertheless, a judgment may be impeached in any proceeding upon the ground of fraud or satisfaction. It is said "that the maxim that fraud vitiates everything applies to judgments" (Freeman on Judgments, p. 99); and this rule may be applied to judgments affected by fraud, whether the fraud arises before, at the time of, or after, the rendition of the judgment. The court has only to determine that a judgment is founded in fraud, in order to authorize its impeachment as a nullity.

In the case at bar, the payment of the $150, the purchase money for the land sought to be recovered, was the foundation of the judgment; and when that money was withdrawn by the depositor, he had no longer any right to claim the execution of that judgment in his favor. If this judgment could be enforced after the consideration had been withdrawn, then the courts might very readily be changed by designing and unscrupulous men into instruments of oppression and wrong. We think there is no principle of law or equity which would recognize the judgment of 1861 in favor of Blevins for the three hun-

dred acres of land, after he had withdrawn from the court the purchase money, as of any binding force or validity. It virtually became vacated by the fraudulent acts of Blevins, and the fraud related back to the rendition of the judgment and nullified the whole.

It may be claimed, that as the $150 deposited in the court and afterwards withdrawn by Blevins was the purchase money for only two hundred acres of land, while the judgment was for three hundred acres, and that therefore the judgment should be held good for the balance of one hundred acres of the land, Blevins may have a valid claim against Farquhar for one hundred acres of land, but he cannot claim it by virtue of the judgment rendered fraudulent by his own act. A judgment cannot be void in part and good in part; it must be either valid or void in whole; and where fraud attaches to a part only of a judgment the whole is a nullity.

We are, therefore, led to the conclusion that Blevins, after the withdrawal of the $150 deposited with the court, had no such valid or binding judgment as could be recognized by any court of justice, and no such lien upon the land in controversy as to protect it from sale by Farquhar or his assignee. It follows that in 1868, when Farquhar became a bankrupt, this land became a part of his estate in the hands of his assignee, and subject to sale by him; and further, that appellant, who purchased the land at the assignee's sale, received a good and valid title, not subject to any claim or demand of Blevins or his vendee, Lockett, who purchased after the bankrupt sale of Farquhar.

Entertaining this view of the pleadings in this case and the law applicable to the same, we must hold that the court below erred in sustaining the exceptions to plaintiff's petition and in dismissing the cause, and therefore the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.