# FIRST NATIONAL BANK OF SHERIDAN v. C. D. WOODWORTH COMPANY.

SALES — CHATTEL MORTGAGE — ATTACK BY CREDITOR — ATTACK BY PURCHASER.

1. The mere fact that one is a creditor will not entitle him to attack a chattel mortgage of his debtor valid upon its face, or a sale completed as between the debtor and his vendee, for fraud; but to be in a position to make such attack he must stand in the attitude of a creditor having obtained a lien upon the goods by judicial process, or brought himself as a creditor into some privity with the goods.

2. A creditor having purchased goods from his debtor and credited the price upon the debt, can not, as defendant in an action for the price brought by the debtor's vendee under a bill of sale executed previous to the purchase, attack the title of the plaintiff on the ground that, as against creditors of his vendor, the sale to plaintiff was void because there had been no change of possession.

3. Contracts for the purchase and sale of chattels, if complete and unconditional, and not within the statute of frauds, or if within the statute, if there is a sufficient memorandum

thereof in writing properly signed, are sufficient as between the parties, to vest the property in the purchaser, without delivery. Such a contract, however, can not exist without the mutual assent of the parties.

4. Without new consideration a debtor promised to protect his creditor, as to a debt already existing, by mortgage or bill of sale, and afterward executed a bill of sale of his stock of goods to the creditor, caused it to be recorded, but retained possession of the goods and control over them, and gave no notice of the bill of sale to the creditor. After learning of its execution the creditor took possession of the remaining goods, and the president of the creditor, a corporation, testified that the bill of sale was not absolute, but was given as security only. Held, that there had not been that meeting of minds or that mutuality of purpose and understanding without which a completed sale is impossible, and that the debtor had intended the conveyance as security only, and the creditor had not assented to a contract of sale.

5. To operate as a chattel mortgage, the instrument must on its face show that it was intended as security. (L., 1890–91, Chap. 7, Sec. 1.) While no particular form of words is required to comply with the statute, there must be some statement contained in the body of the conveyance which will unmistakably indicate its character.

6. Where a bill of sale is invalid on its face as a chattel mortgage for the absence of a statement that it was intended as security, advantage thereof may be taken by a defendant in an action for goods sold and delivered brought by the vendee named in the instrument; the defendant having bought the goods not from the plaintiff, but from the vendor named in the bill while the latter was in possession and exercising dominion over the goods, and the defendant having paid for the goods so bought by crediting the purchase price upon a debt; the plaintiff having no legal right in the goods at the time of the purchase except under the bill of sale considered as a mortgage.

7. The fact the defendant had notice of the bill of sale is not material, as the statutory provisions declaring a chattel mortgage void in the absence of filing or a change of possession, as against purchasers in good faith, refer to an instrument in the execution of which the statutory requirements have been observed.

[Decided July 7, 1897. Commenced in District Court, October 22, 1895.]

ERROR to the District Court for Sheridan County. Hon. W. S. Metz, Judge.

Action by the C. D. Woodworth Company against the First National Bank of Sheridan, for goods sold and delivered.   Judgment was rendered for the plaintiff, and defendant prosecuted error.   The facts are stated in the opinion.

*N. K. Griggs & E. E. Lonabaugh,* for plaintiff in error.

The conveyance under which defendant in error, plaintiff below, claimed was either an absolute bill of sale or a chattel mortgage.   In either case the judgment was erroneous.   Considered as a bill of sale, the transfer was void.

A sale of a chattel, the possession of which is retained by the vendor, is void as against creditors of the vendor. (Doucet v. Richardson, 27 Atl., 635 ; Bell v. Mc Clellan, 67 Cal., 283; Barton v. Brown, 68 id., 11; James v. Fulkerth, 7 Pac., 768; Comaita v. Kyle, 19 Nev., 38; Ewing v. Merkley, 3 Utah, 406.)   A bill of sale absolute on its face, if taken as security, is only a chattel mortgage. (Gray v. Delay, 53 Kan., 177; Sayward v. Nunan, 6 Wash., 87; Shad v. Longston, 12 So., 646.)   The possession of the Woodworth Company was insufficient.   (Richardson v. Matson, 51 Ill. App., 530.)   The bill of sale was void as a chattel mortgage as it wholly failed to comply with the provisions of Sec. 1 of Chap. 7, Laws of 1890–91.

*A. M. Appelget,* for defendant in error.

Moore evidently intended the bill of sale as an absolute sale.   The facts indicate that fact quite clearly.   The instrument can not be considered as a chattel mortgage.   The bank had notice of the bill of sale and the character of the possession of the person in charge of the goods.   An absolute title was passed to defendant in error.   The one

from whom the bank assumed to buy had no title. One without title can give none. (Ballard v. Burgett, 40 N. Y., 314; Spraight v. Hawley, 39 id., 441.) No one can be a bona fide purchaser who has knowledge of facts sufficient to put him upon inquiry, which if followed up, would lead to an entire knowledge of the transaction. One claiming to be an innocent and bona fide purchaser must establish his own good faith. (Ransom v. Schmela, 13 Neb., 77.) The title being in the Woodworth Company, the property was in its possession though in charge of another. (1 Denio, 123.) Our statutes not requiring change of possession in sales of personal property, the rule of the common law prevails that non-delivery is a badge of fraud only. No fraud is alleged and the evidence disproves any. (Mead v. Smith, 16 Conn., 345.) Non-delivery is always open to explanation. If otherwise fair and made without intent to defraud, and for a valuable consideration, then the presumption of the fraudulent character of the transaction arising from non-delivery is to all intents of the law fully refuted. But, actual change of possession is not indispensable. Symbolical delivery answers all purposes. (Thorndike v. Bath, 114 Mass., 116; Benjamin on Sales, 655–8; Commonwealth v. Hess, 16 L. R., 176 and note.) Where there is an inability to take possession from the nature of the circumstances or the articles sold, the failure to do so is satisfactorily explained by taking possession at the earliest possible time. (Mead v. Smith, supra; Ingraham v. Wheeler, 6 Conn., 277.) There was a sufficient delivery of the bill of sale by delivery for record. (In re Guyer, 69 Ia., 585.) The bank is not a bona fide purchaser for value because it paid nothing.

POTTER, JUSTICE.

This action was brought by defendant in error as plaintiff below to recover an alleged indebtedness for goods sold and delivered to the plaintiff in error, and judgment was rendered in favor of the defendant in error for the

amount claimed, the case being tried to the court without a jury.

There is no real conflict in the evidence, but counsel for the respective parties draw different conclusions therefrom. The facts are that one C. E. Moore was engaged in the harness and saddlery business at Sheridan in this State, and was indebted to the defendant in error, a corporation doing business at Omaha, Neb., for goods which he had bought from them. The president of the defendant in error company testified that on May 4, 1895, such indebtedness approximated twelve hundred dollars. He was asked if any arrangements were made on that date relative to the securing of his claim, and testified as follows: "It was in March that I saw him. He had been slow, and I came up to see what was the matter with him. He told me that business had been quiet, and collections were slow, and that he would pay me $475.00 now, and as soon as he could make collections, he would pay me more, and that in case anything would happen that he could not pay, he would protect us for the amount of our claim either by mortgage or bill of sale." This promise on the part of Moore seems to have been entirely voluntary. It was not an agreement entered into at the time the indebtedness was contracted, and it does not appear that any new consideration existed for such an agreement. Although it is true so far as the record discloses that there was actual forbearance, there was not an agreed forbearance or any extension of time expressly granted on account of such promise of security.

On the fourth day of May, 1895, Moore executed a bill of sale absolute in form, reciting a consideration of one thousand dollars, conveying to the Woodworth Company all his stock of harness, goods, saddles, etc., situated in the Eads Building in the town of Sheridan, and said bill of sale was recorded on that day in the office of the county clerk and ex-officio register of deeds. It was not otherwise delivered to the grantee named therein nor to any other person for them. Indeed, it is a mere matter

of presumption that Moore personally left the paper for record, or authorized it to be recorded, the evidence being entirely silent respecting that matter. The bill of sale is found on record, and the record thereof is offered and received in evidence, and a copy of it as so recorded is incorporated in the bill of exceptions, and that is the extent of the information which is to be obtained from the record in this case. Whether it ever came into the manual possession of the Woodworth Company does not appear. No notice of the execution or recording of the instrument was given to them by Moore at any time, and they had no knowledge thereof, until the twenty-first or twenty-second day of May, but more probably the twenty-second, such knowledge being obtained by means of a telegraphic message from one Innis who at some previous time, it incidentally appears, had been employed in some capacity not stated by Moore. On the twenty-third day of May they wired instructions to an attorney at Sheridan to take possession of the stock, and he did so at once upon receipt of such instructions. At that time and also on the two preceding days, the stock and store were in charge of one Rohleder, who had entered Moore's employ on the second or third day of May. We are unable to discover anything in the evidence to indicate the time when Rohleder was first left in charge. Neither does it appear whether Moore remained in town, nor if he had gone when he departed, nor under what circumstances; although the briefs of both counsel state that he had gone to the National Park. Rohleder testifies that after he went to work for Moore the business ran along the same way until he saw Mr. Burrows, which was the twenty-first, and that the store was kept open all the time until possession was taken by the Woodworth Company, with the exception of a few days when they were invoicing.

On the twenty-first day of May Mr. Burrows, the cashier of the plaintiff in error bank went to the store and found Rohleder in charge. He then purchased for the bank the goods in controversy, except a bill of fourteen

dollars the following day. That circumstance is related by Rohleder as follows: "He wanted to buy the goods, and he made some remark and asked who I was working for, and I said, Mr. Moore; and he wanted to know if I would sell him goods, and I said, Yes; and he wanted to know if I would sell on time or trust him, and I said, Yes; and he said, ' Who are you working for? ' and I said, Moore; and he said, ' What are your instructions ? ' and I said, To sell for cash or to responsible parties, and he asked me if the bank was a responsible party; and I said, Yes; and he wanted to know if I would sell the goods, and I said, Yes. The same witness informs us that his instructions were to make remittances to C. D. Woodworth when goods were sold. He made no such remittances prior to their taking possession, and had no communication with them, and so far as the evidence discloses he may have been ignorant of the fact of the execution of the bill of sale.

The answer of the plaintiff in error, defendant below, alleged that the goods had been purchased from Moore and fully paid for, and that is the contention here. Mr. Burrows so testified, but in reference to payment his cross-examination developed the fact that prior to May 21 the bank had made a loan to Moore and held the notes of Moore and another party, and that constituted the payment, the notes, however, some of which were due and some not, remaining in its possession. It was alleged in the reply that the bank had notice of the bill of sale, and such notice was attempted to be shown by the county clerk, who testified that it was his custom to mail weekly statements to the bank of all instruments of that character, and he thought he had mailed them a notice of this particular instrument. That such notice was given is not denied in the evidence.

The case resolves itself into this inquiry: When the goods were purchased by the bank, did the Woodworth Company have such a title in them as to support a recovery in this action? Counsel for defendant in error

insists that the bill of sale amounted to an absolute transfer of the goods and was a completed sale, and that the conduct of Moore demonstrates that such was his intention. On behalf of plaintiff in error on the other hand it is contended that the conveyance was intended as a chattel mortgage, and is void under our statute; and also that if its purpose was to effect a transfer as on a sale, the transaction was ineffectual as such.

Counsel for plaintiff in error discuss in their brief at some length the questions affecting the validity of a sale of personal property without change of possession as against creditors. Those questions are not applicable, and can not determine the relative rights of the parties in this case for the reason if no other that the bank does not appear here in the attitude of a creditor. The issue which is submitted by its answer was that it had made a direct purchase from Moore and had paid him for the goods. On cross-examination, indeed, the fact was brought out that it was a creditor, but it had not obtained any lien upon the goods by any judicial process, nor brought itself in any way into such privity with the goods as would entitle it to attack a mortgage valid upon its face, or a sale completed as between vendor and vendee, for fraud. Bank v. Bates, 120 U. S., 556.

The determination of this case depends upon entirely different considerations. If there was a sale perfected so as to pass the title, the judgment was correctly rendered. We are satisfied that the transaction between Moore and defendant in error did not amount to a sale. Contracts for the purchase and sale of chattels if complete and unconditional and not within the statutes of frauds, or if within such statute, if there is a sufficient memorandum thereof in writing properly signed, are sufficient as between the parties, to vest the property in the purchaser even without delivery. The rule being, as said in Hatch v. Oil Co., 100 U. S., 124, 128, "that such a contract constitutes a sale of the thing, and that its effect is, if not prejudicial to creditors, to transfer the property to the

purchaser against every person not holding the same under a bona fide title for a valuable consideration without notice." This rule, however, implies a contract which is complete and unconditional, and it is elementary that there can not exist such a contract without the mutual assent of the parties. Hatch v. Oil Co., *supra;* Wittkowsky v. Wasson, 71 N. C., 451. We fail to observe any such mutual assent in this case.

The promise of Moore, made without consideration, was to protect by mortgage or bill of sale, not to sell outright, and by complete transfer of title. He gave no notice of the execution of the conveyance, but contented himself with a recording of the same, if he caused that to be done. He retained possession and control over the goods and store, gave instructions relative to the disposition of the goods and the remittance of the proceeds, authorized sales upon credit to responsible parties. Such instructions are given to his own employee who remains in charge representing him with probably no knowledge of the bill of sale. On Moore's part these facts are all consistent with the theory of a mortgage, but utterly inconsistent with that of a sale. It seems to me that his conduct admits of no other construction than that he intended the conveyance as security only.

Again, the president of the Woodworth Company testified that the bill of sale was not absolute as a transfer, but was given as security only. It is suggested by counsel with reference to this item of testimony that witnesses do not deal with nice legal discriminations, and that we are not to expect conciseness of expression from persons not learned in the law; that witnesses consider rather the effect than the means used. We are of the opinion, that however appropriate the argument of counsel may be in dealing with certain expressions of witnesses under some other circumstances, the testimony of the witness above alluded to indicates about as clearly an anything could that the defendant in error had not assented to any contract of sale. The conclusion is irresistible that there had not

been a meeting of minds, or that mutuality of purpose and understanding, without which a complete contract of sale is impossible. This essential feature of a sale being absent, it is unnecessary to consider the effect of the recording of the bill of sale as a delivery. Without deciding that question I am strongly impressed with the difficulty which would be experienced in an endeavor to bring the facts of this case as .shown by the evidence within the limits of those judicial authorities which hold that a delivery for record may constitute a sufficient delivery to the grantee, particularly so as our statutes do not require a .bill of sale intended as evidence of a sale of the kind of chattels in controversy to be recorded. The defendant in error was out of possession when the purchase of the goods in question was made.

The transaction not amounting to a sale, did the recorded conveyance, assuming it to have been delivered on the day of its date, without possession of the goods in the vendee named therein, constitute a valid chattel mortgage? The legislation of this State has undergone many changes upon the subject of mortgages of personal property, and an examination of the various stages of that legislation affords us a reasonably accurate knowledge of the purpose which ultimately found expression in the statutes, as well as the evils which were sought to be prevented, and the good desired to be accomplished. With that information a construction of Sec. 1 of Chap. 7 of the Laws of 1890–91, is not difficult. That section provides the method of executing any conveyance intended to operate as a mortgage of chattels, and contains a proviso as follows: "Provided, that no instrument shall operate as a chattel mortgage unless it shall state distinctly upon its face that it is intended for security, and shall also state the amount for which said instrument is security." This is a requirement of a substantial matter. The instrument must on its face show that it was intended for security.

In Graham v. Blinn, 3 Wyo., 746, this court held that no particular form of words is required to comply with the

statute. It is clear, however, there must be some state-
ment contained in the body of the conveyance which will
unmistakably indicate its character. Where that is lack-
ing, the statute forbids its operation as a mortgage. The
bill of sale executed by Moore is absolute in form and
devoid of the slightest indication that it is intended for
security. It can not, therefore, be regarded as a chattel
mortgage. Being invalid on its face as such, the plain-
tiff in error may take advantage of that fact. The goods
were purchased from Moore and not from the Woodworth
Company, the latter at the time having no legal right in
the goods as purchased. The matter of notice is not
material. Other provisions of the statute require the
mortgage to be filed in the proper public office. If not so
filed, and there is not a change of possession, it is declared
by statute to be void as against subsequent mortgagees or
purchasers in good faith, but these provisions refer to an
instrument intended to operate as a mortgage in the execu-
tion of which the requirements of the proviso of Sec. 1
aforesaid have been observed.

Similar conclusions were reached in Ridgely v. Bank,
75 Fed. Rep., 808, by Judge Hallett sitting in the U. S.
Circuit Court for this district, in respect to a chattel mort-
gage of the property of a co-partnership which had not
been signed by all of the co-partners as is required by
Sec. 2 of the Act referred to.

Our conclusions are, therefore, upon the evidence and
the law applicable thereto, that the plaintiff in error was
entitled to a judgment in its favor; and the judgment of
the district court was error. That judgment must be
reversed and a new trial ordered.

*Reversed.*

CONAWAY, C. J., and CORN, J., concur.