JOHN H. SHARY, Respondent, v. CHRISTIAN ESZLINGER and
Otillia Eszlinger, Appellants.

(176 N. W. 938.)

**Judgments — foreign judgments — full faith and credit to same extent
only to which it is entitled in state where judgment rendered.**

1. By virtue of the full faith and credit provision of the Federal Constitution, the courts of this state are bound to give to the judgment of a sister state the same faith and credit, and only the same, which it has in the state where it was rendered; if re-examinable, or subject to defense on certain grounds there, it is open to the same inquiries and subject to the same defenses here.

**Judgments — vacation of — equitable excuse may be interposed in this state
against a judgment obtained by fraud in another state — when.**

2. The requirement that full faith and credit shall be given in one state to the judgments obtained in another will not prevent the courts of this state, in which legal and equitable rights and remedies are administered in one court and in one form of action, from permitting an equitable defense to be interposed against a judgment obtained by fraud in another state, where the courts of the state where the judgment was rendered are authorized to vacate or enjoin the enforcement of a judgment obtained by fraud.

Opinion filed March 2, 1920.

From a judgment of the District Court of Logan County, *Graham,*
J., defendants appeal.

Reversed.

*Geo. M. McKenna* and *Miller, Zuger & Tillotson,* for appellants.

The defense of fraud in the procurement of a sister state judgment is available as a defense upon an action upon such judgment, and that such attack is not collateral and is not contrary to the full faith and

NOTE.—On right to resist judgment of sister state on ground of fraud, see note in 32 L.R.A. (N.S.) 905.

On decision under full faith and credit provision as a Federal question, see note in 62 L.R.A. 529.

For authorities passing on the question of judgment of the courts of other states, see comprehensive note in 103 Am. St. Rep. 304.

On faith and credit which a judgment of one state has in another, see note in 36 L. ed. (U. S.) 1123.

credit clause of the Federal Constitution, nor the Statute of 1790. Levin v. Gladstin, 142 N. C. 482, 32 L.R.A.(N.S.) 905, 55 S. E. 371, and notes.

It was not incumbent upon the defendants to apply to the Texas court to be relieved of the judgment there obtained. Fleming v. Seligson, 57 Tex. 524; Delhart Real Estate Agency v. Le Masrer, 62 Tex. Civ. App. 579.

The facts pleaded in the answer herein, if addressed to the Texas court, would have authorized and made it the duty of that court to afford the defendants adequate relief. Mottu v. Davis, 151 N. C. 237, 65 S. E. 969.

It is sufficient to annul a judgment or restrain the enforcement thereof if the successful party has kept the unsuccessful party away from court by a false promise of a compromise. United States v. Throckmorton, 98 U. S. 61, 25 L. ed. 93; Vance v. Burbank, 101 U. S. 514, 25 L. ed. 929; Wilson v. Anthony, 72 N. J. Eq. 836, 66 Atl. 907; Snyder v. Critchfield, 44 Neb. 66, 62 N. W. 306; Keeler v. Elston, 22 Neb. 310, 34 N. W. 891; Payne v. O'Shea, 84 Mo. 129; Crim v. Crim, 162 Mo. 544, 54 L.R.A. 502.

The recent case of Levin v. Gladstin, 32 L.R.A. 905, is fully annotated and contains practically all the cases bearing upon the question before the court.

If the judgment was fraudulently obtained, then every defense which the maker of the notes had as against the bank might properly be shown upon the trial. Bank of Sharron v. Anderson (Wyo.) 48 Pac. 197; Same case, 53 Pac. 280; Drinkard v. Ingram, 21 Tex. 650.

*R. H. Sherman, Arthur B. Atkins, Scott Cameron* and *E. T. Burke,* for respondent.

The plea of *nil debit* is not good in an action brought in one state upon judgment rendered in another, after personal service of process upon the judgment debtor. Mills v. Duryee, 7 Cranch, 481, 3 L. ed. 411.

A plea to an action upon a judgment rendered in a court of competent jurisdiction in a sister state, in a suit contested by the defendant, alleging that judgment was procured by the fraud of plaintiff is bad on demurrer. Christmas v. Russell, 5 Wall. 290, 18 L. ed. 475; Max-

well v. Stewart, 21 Wall. 71, 22 L. ed. 564; Simmons v. Saul, 138 U. S. 439, 34 L. ed. 1054.

The Texas judgment is merely voidable, and not void, and the attack must therefore be made in a direct proceeding, and not collaterally. Mikeske v. Blum, 63 Tex. 46; Murchison v. White, 54 Tex. 46; Fleming v. Seligson, 57 Tex. 531; Williams v. Haynes, 77 Tex. 284; Marin v. Augendahl, 32 N. D. 536.

A judgment rendered by a court of competent jurisdiction may be impeached for fraud only in a direct proceeding brought for that purpose in the court in which it was rendered. McDonald v. Drew, 64 N. H. 547, 15 Atl. 148.

CHRISTIANSON, Ch. J. This is an action upon a judgment rendered in favor of the plaintiff and against the defendants by the district court of Hidalgo county, Texas. A verdict was directed in favor of the plaintiff and defendants have appealed.

The defense pleaded was: that the defendants by reason of the fraud and deceit of the plaintiff were prevented from appearing and defending in the Texas court; that the judgment rendered by said court against the defendants was obtained by reason of the fraudulent acts of the plaintiff; and that defendants had a complete defense to the action, which defense they were prevented from asserting by reason of plaintiff's said fraudulent acts.

Upon the trial, the defendants offered to prove such defense, but the trial court ruled that by virtue of the full faith and credit clause of the Federal Constitution (U. S. Const. art. 4, § 1) the judgment could not be assailed on the ground that it was procured by fraud. The correctness of such ruling is challenged on this appeal.

The provision that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state" was intended to prevent discrimination by the several states against the citizens and public authority and proceedings of other states. Cooley, Const. Lim. 7th ed. pp. 36-41. In his work on the Constitution, Story suggests that the motive for the full faith and credit provision in the Federal Constitution "must have been, 'to form a more perfect union,' and to give to each state a higher security and confidence in the others by attributing a superior sanctity and con-

clusiveness to the public acts and judicial proceedings of all. There could be no reasonable objection to such a course. On the other hand, there were many reasons in its favor. The states were united in an indissoluble bond with each other. The commercial and other intercourse with each other would be constant and infinitely diversified. Credit would be everywhere given and received; and rights and property would belong to citizens of every state in many other states than that in which they resided. Under such circumstances, it could scarcely consist with the peace of society, or with the interest and security of individuals, with the public or with private good, that questions and titles, once deliberately tried and decided in one state, should be open to ligitation again and again, as often as either of the parties, or their privies, should choose to remove from one jurisdiction to another. It would occasion infinite injustice, after such trial and decision, again to open and re-examine all the merits of the case." Story, Const. 5th ed. § 1309.

Story further says that the true intent and meaning of the full faith and credit clause, as applied to judgments, is that "it gives them the same faith and credit as they have in the state court from which they are taken. If in such court they have the faith and credit of the highest nature, that is to say, of *record* evidence, they must have the same faith and credit in every other court. So, that Congress have declared the *effect* of the records, by declaring, what degree of faith and credit shall be given to them. If a judgment is conclusive in the state where it is pronounced, it is equally conclusive everywhere. *If re-examinable there, it is open to the same inquiries in every other state."* Story, Const. 5th ed. § 1313.

The views thus expressed by Story were afterwards approved and adopted by the Supreme Court of the United States. See McElmoyle v. Cohen, 13 Pet. 312, 10 L. ed. 177. See also Hampton v. M'Connel, 3 Wheat. 233, 4 L. ed. 378. In Embry v. Palmer, 107 U. S. 3, 27 L. ed. 346, 2 Sup. Ct. Rep. 25, which was an action to restrain the enforcement of a judgment of the District of Columbia, when sued upon in Connecticut, on the ground of fraud in procuring the judgment, the court said: "The rule for determining what effect shall be given to such judgments is that declared by this court in respect to the faith and credit to be given to the judgments of state courts in the courts of

other states in the case of M'Elmoyle v. Cohen, 13 Pet. 312, 326, 10 L. ed. 177, 185, where it is said: 'They are record evidences of a debt or judgment of record, to be contested only in such way as judgments of record may be, and consequently are conclusive upon the defendant in every state, except for such causes as would be sufficient to set aside the judgment in the courts of the state in which it was rendered.' The question then arises, what causes would have been suffcient in the District of Columbia according to the law there in force, to have authorized its courts to set aside the judgment recovered there by Embry against Stanton & Palmer?

This is answered by the decision of this court, upon the point in the case of Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 3 L. ed. 362. That was a bill in equity, filed in a court of the District of Columbia, perpetually to enjoin the collection of so much of a judgment at law recovered in the District as was in excess of an amount claimed to be the sum equitably due. The grounds of relief alleged were, that a fraud had been practised upon the underwriters in a valued policy of marine insurance, by an overvaluation of the ship, and that the complainant had been prevented from making the defense at law. Chief Justice Marshall, delivering the opinion of the court, affirming the decree of the court below dismissing the bill, stated the rule as follows:

"Without attempting to draw any precise line, to which courts of equity will advance and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law or of which he might have availed himself at law but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery. On the other hand, it may with equal safety be laid down as a general rule that a defense cannot be set up in equity, which has been fully and fairly tried at law, although it may be the opinion of that court that the defense ought to have been sustained at law.' . . .

"This was held to be the law prevailing in the District of Columbia, not by reason of any local peculiarity, but because it was a general principle of equity jurisprudence."

It follows as a corollary to the doctrine that the judgment of a state court has the same effect in every other court in the United States, which it had in the state where it was rendered, that "no greater effect can be given to any judgment of a court of one state, in another state, than is given to it in the state where rendered. Any other rule would contravene the policy of the provisions of the Constitution and Laws of the United States on that subject." Board of Public Works v. Columbia College, 17 Wall. 521, 21 L. ed. 687. See also Robertson v. Pickrell, 109 U. S. 608, 27 L. ed. 1049, 3 Sup. Ct. Rep. 407; Overby v. Gordon, 177 U. S. 608, 44 L. ed. 741, 20 Sup. Ct. Rep. 603.

Applying these principles, the question presented in this case resolves to this: Would the facts set forth in the answer, and covered by the proof, be sufficient to authorize the courts of Texas to set aside the judgment or enjoin the enforcement thereof?

By the express terms of our statutes we are required to take judicial notice of the laws of the state where the judgment was rendered. Comp. Laws 1913, subd. 64, § 7938. See also Babcock v. Marshall, 21 Tex. Civ. App. 145, 50 S. W. 728. And, upon examining the decisions of the appellate courts of Texas, we find that in that state a judgment obtained by fraud may be vacated or enforcement thereof enjoined. Some of the cases even go to the extent of holding that fraud may be urged as a legal defense against the judgment. See Dickenson v. McDermott, 13 Tex. 249; Overton v. Blum, 50 Tex. 423; Byars v. Justin, 2 Tex. App. Civ. Cas. (Willson) 603; Nevins v. McKee, 61 Tex. 413; Harn v. Phelps, 65 Tex. 598; Cayce v. Powell, 20 Tex. 768, 73 Am. Dec. 211; Rodriquez v. Lee, 26 Tex. 32; Hutchins v. Lockett, 39 Tex. 166; Roller v. Wooldridge, 46 Tex. 485; Coffee v. Ball & Co. 49 Tex. 6; Babcock v. Marshall, 21 Tex. Civ. App. 145, 50 S. W. 728; Lindsley v. Sparks, 20 Tex. Civ. App. 56, 48 S. W. 204; Delhart Real Estate Agency v. Le Master, 62 Tex. Civ. App. 579, 132 S. W. 860; Gulf, C. & S. F. R. Co. v. Stephenson, — Tex. Civ. App. —, 26 S. W. 236. See also St. Louis Expanded Metal Fireproofing Co. v. Beilharz, — Tex. Civ. App. —, 88 S. W. 512.

In Overton v. Blum, 50 Tex. 423, paragraph 2 of the syllabus reads: "When a judgment has been obtained by fraud, accident, or mistake, and without any want of diligence on the part of the party against whom it was rendered, the district court, in the exercise of its equity

powers, may grant relief by re-examining the case on its merits, and granting such relief as equity and justice may demand."

In Harn v. Phelps, 65 Tex. 598, it was held that a judgment may be set aside in a separate proceeding brought for that purpose when it is shown that the party maintaining the proceeding "was prevented from urging against the judgment of which she complains objections which would or ought to have prevented its rendition; and that such prevention resulted from fraud, accident, or the acts of the adverse party, without any fault or negligence on her part."

In Hutchins v. Lockett, 39 Tex. 166, which was an action of trespass to try title, the defendant was permitted to assail a decree for specific performance on the ground that certain moneys tendered into court in the specific performance suit had been withdrawn. The court said, "that a judgment rendered by a court of competent jurisdiction cannot be attacked in a collateral proceeding is a rule of almost universal application. Nevertheless, a judgment may be impeached in any proceeding upon the ground of fraud or satisfaction. It is said that the maxim that fraud vitiates everything applies to judgments (Freem. Judgm. p. 90) ; and *this rule may be applied to judgments* affected by fraud, *whether the fraud arises before, at the time of, or after, the rendition of the judgment*. The court has only to determine that a judgment is founded in fraud, in order to authorize its impeachment as a nullity." 39 Tex. 169.

In Rodriquez v. Lee, 26 Tex. 32, which was an action of trespass to try title, the court held that "where defendants in an action of trespass to try title were permitted under the general issue to offer evidence of title in themselves by purchase at sheriff's sale under a judgment against the plaintiff, it was competent for the plaintiff to rebut such evidence by proving that the judgment was obtained by fraud; and, under such circumstances, it was not incumbent on the plaintiff to plead any facts showing the nullity of such judgment, or of the title set up under it."

No courts have been more emphatic in declaring that fraud practised in obtaining a judgment may be pleaded as an equitable defense in an action on a judgment rendered in a sister state than the courts of Texas.

In Babcock v. Marshall, 21 Tex. Civ. App. 145, 50 S. W. 728, which

was an action upon a judgment rendered by the circuit court of Cook county, Illinois, the Texas court said: "There are several cases decided by the courts of this state upon this subject, some of which directly, and others inferentially, hold that fraud can be interposed as a defense to the judgment of a sister state, when sued upon here. . . . If we felt constrained to follow the decisions of the courts of this state, to the effect that fraud as a strictly legal defense may be charged against the plaintiff to defeat a recovery in a suit based upon the judgment of a sister state, it would not be necessary that we should so declare ourselves in this case, because, in our opinion, the judgment of the trial court may be affirmed upon other grounds. In addition to the assertion of fraud in procuring the judgment as a strictly legal defense, the defendant in error urged the same state of facts as a basis for equitable relief against the judgment and the enforcement of same by plaintiff in error. *It is a general principle of equity, which may be said to exist in nearly, if not, all of the states of the Union, that a judgment at law, which was procured by the fraudulent conduct of the plaintiff, which had the effect to deprive the defendant of a meritorious legal defense which he was not guilty of negligence in urging, may be enjoined, and the plaintiff restrained from enforcing it.* Embry v. Palmer, 107 U. S. 11, 27 L. ed. 349, 2 Sup. Ct. Rep. 25; 2 High, Inj. 3d ed. §§ 190–208, and cases thereafter cited. The statute of the United States which gives effect to the provision of the Constitution that declares that full faith and credit shall be given in each state to the public records, etc., of any other state, uses this language: 'And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state whence the said records are or shall be taken.' U. S. Rev. Stat. § 905, Comp. Stat. § 1519, 3 Fed. Stat. Anno. 2d ed. p. 212. In Embry v. Palmer, 107 U. S. 10, 27 L. ed. 349, 2 Sup. Ct. Rep. 31, which was an action to restrain the enforcement of a judgment of the District of Columbia, when sued upon in Connecticut, on the ground of fraud in procuring the judgment, the court said: 'The rule for determining what effect shall be given to such judgments is that declared by this court in respect to the faith and credit to be given to the judgments of state courts in the courts of other states in the case of McElmoyle v. Cohen, 13 Pet. 312,

326, 10 L. ed. 177, 184, where it is said: "They are record evidences of a debt, or judgments of record, to be contested only in such way as judgments of record may be; and, consequently, are conclusive upon the defendant in every state, *except for such causes as would be sufficient to set aside the judgment in the courts of the state in which it was rendered."* The question then arises, what causes would have been sufficient in the District of Columbia according to the law there in force to have authorized its courts to set aside the judgment recovered there by Embry against Stanton & Palmer?' *It is clear from this that it was not the purpose of the Constitution to give to the judgments of a state court a more conclusive effect, when sought to be enforced in a sister state, than they would be entitled to in the state where rendered. And it is also clear that the existence of the general principles of equity which authorize restraining a judgment procured through fraud in the state where the judgment was originally rendered is authority for a like procedure in the courts of a different state where it is afterwards sought to be enforced, provided the courts of the latter state are not wanting in jurisdiction to enforce such a remedy.* As to the existence of such a remedy in this state, there can be no question, as illustrated in the following cases: Dickenson v. McDermott, 13 Tex. 249; Overton v. Blum, 50 Tex. 423; Byars v. Justin, 2 Tex. App. Civ. Cas. (Willson) 603; Nevens v. McKee, 61 Tex. 413; Harn v. Phelps, 65 Tex. 596."

In this state all distinctions between actions at law and suits in equity are abolished. Comp. Laws 1913, § 7355. "The defendant may set forth by answer as many defenses and counterclaims as he may have, whether they are such as have been heretofore denominated legal or equitable." Comp. Laws 1913, § 7449. The district court concededly is vested with jurisdiction, not only of the cause of action alleged in the complaint, but, of all actions to vacate judgments or to enjoin their enforcement. The plaintiff invoked the jurisdiction of the district court of Logan county, and asked that he be awarded judgment against the defendants for the amount of the Texas judgment. In his complaint he averred,—and the exemplified record shows,—that the Texas judgment was obtained by default. In their answer the defendants averred that they had a complete defense to the claim upon which the judgment is based, but that they were prevented from asserting such defense by reason of the fraud and deception of the plaintiff. The

defendants, therefore, invoked the equity powers of the court, and asked "that the plaintiff be restrained from asserting said judgment in the state of North Dakota." We have no hesitancy in holding that if the facts are as set forth in the answer it would have been the duty of the trial court to have vacated a domestic judgment. And as we have already noticed the facts averred would have authorized a Texas court to have vacated the judgment or enjoined its enforcement. Hence, it seems clear that the defendants are entitled to assert these same facts as a defense, or as a basis for affirmative relief, against the Texas judgment in an action thereon in this state. To so hold does not deny to the judgment any faith or credit which it has in Texas, but merely permits it to be attacked in this state upon the same grounds that it might have been attacked there. To say that it is not subject to such attack here would in effect give to it greater faith and credit than it is entitled to at home. Black, Judgm. 2d ed. § 918.

But respondent contends that the United States Supreme Court has ruled directly, that in an action on a judgment of a sister state, the defendant cannot plead that the judgment was obtained by fraud, and cites certain cases which it is claimed sustain the contention.

Especial reliance is placed upon the following statement in Hanley v. Donoghue, 116 U. S. 1, 29 L. ed. 535, 6 Sup. Ct. Rep. 242: "Judgments recovered in one state of the Union, when proved in the courts of another differ from judgments recovered in a foreign country in no other respect than that of not being re-examinable upon the merits, not impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

It is true that this statement standing alone sustains the contention of the respondent; but the case did not call for an expression upon the question whether fraud in the procurement of a judgment might be asserted as a defense in an action on a judgment of a sister state. In that case an action was brought in Maryland upon a judgment which had been obtained in the state of Pennsylvania, in an action of covenant, against Charles Donoghue, together with one John Donoghue.

"The declaration contained three counts. The first count set forth the recovery and record of the judgment as aforesaid in said court of common pleas, and alleged that it was still in force and unreversed. The second count contained similar allegations, and also alleged that

in the former action Charles Donoghue was summoned, and property of John Donoghue was attached by process of foreign attachment, but he was never summoned and never appeared, and that the proceedings in that action were duly recorded in that court. The third count repeated the allegations of the second count, and further alleged that 'by the law and practice of Pennsylvania the judgment so rendered against the two defendants aforesaid is in that state valid and enforceable against Charles Donoghue and void as against John Donoghue,' and that 'by law of Pennsylvania any appeal from the judgment so rendered to the supreme court of Pennsylvania (which is the only court having jurisdiction of appeals from the said court of common pleas) is required to be made within two years of the rendition of the judgment, nevertheless no appeal has ever been taken from the judgment so rendered against the said defendants, or either of them.'

"The defendant filed a general demurrer to each and all of the counts, which was sustained, and a general judgment rendered for him. Upon appeal by the plaintiffs to the court of appeals of the state of Maryland, the judgment was affirmed. 59 Md. 239, 43 Am. Rep. 554. The plaintiffs thereupon sued out writ of error, on the ground that the decision was against a right and privilege set up and claimed by them under the Constitution and laws of the United States." 116 U. S. 1, 29 L. ed. 536, 6 Sup. Ct. Rep. 242.

Not only is the statement in Hanley v. Donoghue, supra, to the effect that judgments recovered in one state of the Union, when proved in the courts of another, are not impeachable for fraud in obtaining them, obiter dictum, but in at least one subsequent decision the Supreme Court of the United States has announced, and cited with approval cases supporting the contrary doctrine. In Cole v. Cunningham, 133 U. S. 107, 33 L. ed. 538, 10 Sup. Ct. Rep. 269, the United States Supreme Court sustained a decree of the supreme judicial court of Massachusetts restraining the defendants, citizens of that commonwealth, from the prosecution of attachment suits in the state of New York. In disposing of the contention that the decree of the Massachusetts court refused to give full faith and credit to the judicial proceedings of the state of New York, the court said: "This does not prevent an inquiry into the jurisdiction of the court, in which a judgment is rendered, to pronounce the judgment, nor into the right of the state to exercise

authority over the parties or the subject-matter, *nor whether the judg-ment is founded in, and impeachable for, a manifest fraud.* The Con-stitution did not mean to confer any new power on the states, but sim-ply to regulate the effect of their acknowledged jurisdictions over per-sons and things within their territory. It did not make the judgments of the states domestic judgments to all intents and purposes, but only gave a general validity, faith, and credit to them as evidence. . . . These well-settled principles find pertinent illustration in the decisions of the highest tribunal of the state of New York, to one of which we refer, as the contention is that the decree under review was on some way an unconstitutional invasion of the jurisdiction of that state. In Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152, the plaintiff in a judgment, recovered in New York, brought an action upon it in the superior court of Connecticut, whereupon the defendant in the judg-ment filed a bill against the plaintiff on the equity side of the same court, alleging that the judgment was procured by fraud, and praying relief. The plaintiff in the judgment appeared in and litigated the equity suit, and the court adjudged that the allegations of fraud in obtaining the judgment were true, and enjoined him from prosecuting an action upon it. He assigned the judgment, and it was held in a suit in New York, brought thereon by the assignee, that a duly authen-ticated copy of the record of the decree in the Connecticut court was conclusive evidence that the judgment was obtained by fraud.

"The court of appeals held that while a judgment rendered by a court of competent jurisdiction could not be impeached collaterally for error or irregularity, yet it could be attacked upon the ground of want of jurisdiction, or of fraud or imposition; that the right of the plain-tiff in the judgment was a personal right, and followed his person; that when the courts of Connecticut obtained jurisdiction of her person by the due service of process within the state, these courts had full power to pronounce upon the rights of the parties in respect to the judgment, and to decree concerning it; that the jurisdiction of a court of equity anywhere, to restrain suit upon a judgment at law, upon suf-ficient grounds, was one of the firmly established parts of the authority of courts of equity; and that it could not be held that a court of equity in one state had no jurisdiction to restrain such a suit upon a judg-ment of a court of law of another state. If the objection to so doing

was founded upon an assumed violation of the comity existing between the several states of the United States, that did not reach to the jurisdiction of the court, a rule of comity being a self-imposed restraint upon an authority actually possessed; and as to the objection that the Constitution of the United States and the laws made in pursuance of it inhibited the action of the Connecticut courts, this could not prevail, since the full faith and credit are given to the judgment of a state court when in the courts of another state it receives the same faith and credit to which it was entitled in the state where it was pronounced. Pearce v. Olney, 20 Conn. 544; Engel v. Scheuerman, 40 Ga. 206, 2 Am. Rep. 573; Cage v. Cassidy, 23 How. 109, 16 L. ed. 430."

In Jaster v. Currie, 198 U. S. 144, 49 L. ed. 988, 25 Sup. Ct. Rep. 614, the court said: "We will assume that, on general demurrer, a plea that the judgment was obtained by fraud would be a good equitable plea." And in Howard v. De Cordova, 177 U. S. 609, 44 L. ed. 908, 20 Sup. Ct. Rep. 807, it was held that a Federal court may take jurisdiction of a suit to set aside a judgment of a state court, "when it is attacked for fraud and want of jurisdiction because it was rendered on service by publication, the order for which was obtained by a false affidavit." See also Cooper v. Newell, 173 U. S. 555, 43 L. ed. 808, 19 Sup. Ct. Rep. 506.

The above cited decisions speak for themselves. They indicate at least that the United States Supreme Court does not consider the general statements in the decisions upon which respondent relies as applicable or controlling in a proceeding in equity to enjoin the enforcement of a judgment obtained by fraud.

We are of the opinion, and hold, that under our practice the defendants may assert in this action that the Texas judgment was obtained by plaintiff's fraud. Such holding is in harmony with the views expressed by many of the state courts, and by legal writers of recognized ability. See Black, Judgm. 2d ed. §§ 917, 918; Bailey, Jur. §§ 202, 203; Freeman, Judgm. § 576; Pom. Eq. Juris. 3d ed. § 919; Rogers v. Gwinn, 21 Iowa, 58; Gundlach v. Park, 140 Minn. 78, 165 N. W. 969, 167 N. W. 302; Pearce v. Olney, 20 Conn. 544; Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152; Stevens v. Central Nat. Bank, 144 N. Y. 50, 39 N. E. 68; Davis v. Cornue, 151 N. Y. 172, 45 N. E. 449; Trebilcox v. McAlpine, 62 Hun, 317, 17 N. Y. Supp. 221; White v.

45 N. D.—10.

Reid, 70 Hun, 197, 24 N. Y. Supp. 290; Keeler v. Elston, 22 Neb. 310, 34 N. W. 891; Snyder v. Critchfield, 44 Neb. 66, 62 N. W. 306; Davis v. Headley, 22 N. J. Eq. 115; Wilson v. Anthony, 72 N. J. Eq. 836, 66 Atl. 907; Keith v. Algar, 114 Tenn. 1, 85 S. W. 71; Bank of Chadron v. Anderson, 6 Wyo. 518, 48 Pac. 197, 49 Pac. 406, 7 Wyo. 441, 53 Pac. 280; Marx v. Fore, 51 Mo. 69, 11 Am. Rep. 432; Ward v. Quinlivin, 57 Mo. 425; Payne v. O'Shea, 84 Mo. 129; Warrington v. Ball, 33 C. C. A. 609, 62 U. S. App. 413, 90 Fed. 464; Levin v. Gladstein, 142 N. C. 482, 32 L.R.A.(N.S.) 905, 115 Am. St. Rep. 747, 55 S. E. 371.

The situation in this case is identical with that involved in Pearce v. Olney, 20 Conn. 544, and Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152. The action was brought in a court of law in Connecticut upon a New York judgment. Thereafter the defendant instituted an action in equity to enjoin the prosecution of the action at law. Here the plaintiff instituted an action upon the judgment in the district court. Thereupon the defendants invoked the equitable powers of that court, and asked that plaintiff be restrained from asserting the judgment sued upon in this state. In view of our reformed procedure, the defendants were not required to institute a new action. They might assert their equitable cause by proper averments in their answer. This they have done. They have set forth facts in the nature of a bill in equity, and prayed "that the plaintiff be restrained from asserting said judgment in the state of North Dakota, and for such other and further relief as may seem just to the court."

It follows from what has been said that the judgment appealed from must be reversed and the cause remanded for a new trial.

It is so ordered.

BIRDZELL and ROBINSON, JJ., concur.

ROBINSON, J. (concurring): I have signed and do concur in the thorough and well-considered opinion by Chief Justice Christianson. By another way I arrive at the same result.

The case illustrates that some judges and some lawyers are slow to learn the simple fact that it is not the purpose of the law or the courts to aid one person in the robbery of another. The appeal is from a

judgment on a directed verdict against the defendant for nearly $4,000 —the amount of a Texas judgment for the balance due on 39 acres of worthless land sold by the plaintiff to the defendant. Defendant is an innocent and unlearned Russian farmer of Logan county, North Dakota. He cannot read or write English and he does not know the tricks and deceptions of Texas land traders. In the spring of 1915 the plaintiff came to the farm of defendant in Logan county and by divers false representations induced the defendant to buy 39 acres of worthless land in Texas at $200 an acre. He assured defendant that the land was well worth $200, and that it was irrigated land and would produce three crops in a year. Without seeing the land or knowing anything of it defendant paid the plaintiff, in cash, $1,000, conveyed to him 40 acres of land in Logan county worth $1,600, and gave his promissory notes and obligations for the balance. Then defendant went to the Texas land, spent about $800 in trying to cultivate and improve it, and found that only 3 acres of it could be irrigated, and that it was of no value. Then he abandoned the land and returned to North Dakota. But as he was leaving Texas the plaintiff served on him process in an action to recover the balance due on the contract, and by default a judgment of foreclosure was taken on which the Texas land was sold and bid in by the plaintiff for about 10 per cent of its price to defendant. Now the plaintiff has his Texas land and the improvements, worth, at his figure, $8,000, and his cash payment, $1,000, his land payment, $1,600, and he seeks to recover $4,000.

These facts do constitute a counterclaim on which defendant should recover about $8,000, which would more than offset the plaintiff's judgment. The defense is really a proper counterclaim which is connected with the subject of the action. Hence, on the facts stated in the answer, defendant is justly entitled to recover the same as if he had brought an action against the plaintiff. It is true that the counterclaim and cross action in the answer is defective in form, but that can be easily amended. The cause of action stated in the answer was not in any manner adjudicated by the Texas court, and as the plaintiff has appeared in our courts, he should not be allowed to depart and to dismiss the action without a proper judgment against him, which will more than offset the Texas judgment.

BRONSON, J. (specially concurring). In my opinion, the principal and serious question involved in this case, is whether the defense pleaded is available as a direct equitable action seeking to restrain the enforcement of the sister state judgment alleged and proved.

The effect to be given a sister state judgment, under the Federal Constitutional provision, has been the subject of much litigation and a considerable variety of interpretation in the cases adjudged.

It is fairly well settled, however, that a sister state judgment in a foreign state is to be regarded, ordinarily, upon the same footing as a domestic judgment, so far as the merits of the claim or subject-matter of the suit is concerned. Story, Const. 5th ed. § 1309; M'Elmoyle v. Cohen, 13 Pet. 312, 10 L. ed. 177.

In Fauntleroy v. Lund, 210 U. S. 230, 236, 52 L. ed. 1039, 1042, 28 Sup. Ct. Rep. 641, the principle, stated by Chief Justice Marshall in Hampton v. M'Connel, 3 Wheat. 234, 4 L. ed. 378, is restated as correct, that the judgment of the state court should have the same credit, validity, and effect in every other court in the United States, which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States.

Otherwise stated, a sister state judgment, conclusive in the state where pronounced, is conclusive everywhere. However, this does not prevent an inquiry into the jurisdiction of the court where such judgmnt was rendered, or the right of a state to exercise authority over the persons or the subject-matter. Story, Const. 5th ed. § 1313. See note in 32 L.R.A.(N.S.) 909, 913, 917, 929.

In the instant case the pertinent question is whether equity in this state may intervene to restrain the enforcement of a sister state judgment for fraud, practised in the procurement and rendition of such judgment. The general principle has been recognized that a court of equity, either in a Federal or state court, or in a court of the state where the judgment was rendered, may enjoin through an independent action, the enforcement of a judgment upon equitable grounds. Embry v. Palmer, 107 U. S. 3, 27 L. ed. 346, 2 Sup. Ct. Rep. 25; Simon v. Southern R. Co. 236 U. S. 115, 124, 59 L. ed. 492, 498, 35 Sup. Ct. Rep. 255; Marshall v. Holmes, 141 U. S. 597, 601, 35 L. ed. 870, 874,

12 Sup. Ct. Rep. 62; Cole v. Cunningham, 133 U. S. 102, 33 L. ed. 538, 10 Sup. Ct. Rep. 269; 23 Cyc. 1557.

In the early case of Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 3 L. ed. 362, where an action was brought in equity to perpetually enjoin a judgment, Chief Justice Marshall concerning the relief that a court in equity might grant in such case stated:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.

"On the other hand it may with equal safety be laid down as a general rule that a defense cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of that court that the defense ought to have been sustained at law."  See Marshall v. Holmes, 141 U. S. 597, 601, 35 L. ed. 870, 874, 12 Sup. Ct. Rep. 62.

In Cole v. Cunningham, 133 U. S. 107, 33 L. ed. 538, 10 Sup. Ct. Rep. 269, the principle, concerning sister state judgments, is recognized upon a lengthy consideration of authorities, that a sister state judgment, under the constitutional provisions and the congressional act therefor, shall have such faith and credit given in every court within the United States as it has by law and usage in the courts of the state where rendered, but that this did not prevent the right of a state to exercise authority over the parties or the subject-matter, nor, whether the judgment was founded in, and impeachable, for, a manifest fraud.

I am satisfied, that, under the authorities quoted in the opinion of the Chief Justice, a direct, equitable action could be maintained in Texas, based upon the grounds set up in the defense in this action, to restrain the enforcement of such Texas judgment; that in this state this power may likewise be exercised by seeking directly the aid of the equity to restrain the enforcement of this judgment in this state; this judgment, in itself cannot be impeached in this state by the defense offered, for clearly it appears upon the record that the Texas court

had jurisdiction, both over the parties and the subject-matter; that the judgment, as there rendered, so far as the judgment itself is concerned, is a valid sister state judgment until set aside by the court which pronounced it. The power of this court, however, to restrain the enforcement of that judgment where it is unconscienable so to do, presents a different matter and different considerations. Such power goes to the exercise of equity, independently to restrain the party, the plaintiff in this case, from seeking in this jurisdiction to enforce his judgment where it is unconscionable and inequitable for him so to do.

The exercise of such power by this state does not deprive the plaintiff of his Federal Constitution protection under the full faith and credit clause. Cole v. Cunningham, supra.

Under our practice, where causes of legal and equitable cognizance may be considered in the same case, I am of the opinion that as a court in equity those matters of defense pleaded by the defendant, which are directly available for the purposes of establishing fraud in the procurement and rendition of the judgment involved, are available for purposes of seeking directly the aid of equity to enjoin or restrain the enforcement of the sister state judgment. These matters are for the consideration of a court in equity. An opportunity should be given upon this record, to the defendant to so assert, directly, such matters pleaded in defense, properly to be considered in accordance with the principles herein stated. The trial court did not err in determining the judgment to be a valid sister state judgment. The judgment should be reversed and remanded for further proceedings, consonant with the principles herein stated.

GRACE, J., concurs.